32 F.3d 37
 Irwin MAUTNER, individually and as Trustee u/t/a dated
October 25, 1984; Win-Ter Management Co.; Shari and Jay
Stack, individually and as Trustees u/t/a dated April 30,
1981, June 28, 1983, and January 30, 1985; Jonathan N.
Tanner; Tanner & Gilbert P.C. Retirement Plan Trust, all of
the foregoing individually and on behalf of the shareholders
of Transportation Capital Corp., Plaintiffs-Appellees,
v.
Melvin L. HIRSCH; Dorothy T. Hirsch; Jonathan H. Hirsch, Defendants,
Transporation Capital Corp., Defendant-Appellant,
Lester J. Tanner; Estate of John R. Fernbach and Eisenberg,
Honig, Fogler, Dimas & Johnston, Appellees.
 No. 1306, Docket 93-9071.
 United States Court of Appeals,
Second Circuit.
 Argued April 26, 1994.
Decided Aug. 5, 1994.
 
 Stuart L. Potter, New York City (Butler, Fitzgerald & Potter, of counsel), for defendant-appellant.
 Lester J. Tanner, New York City (Scott A. Mautner, Tanner Propp & Farber, of counsel), for plaintiffs-appellees Tanner & Gilbert P.C. Retirement Plan Trust, and substituting for John R. Fernbach, deceased, for plaintiffs-appellees Shari and Jay Stack and Jonathan N. Tanner.
 Steven C. Bagwin, Eisenberg, Honig, Fogler, Greenawalt, Ogilvie & Davis, New York City, for plaintiffs-appellees Irwin Mautner and Win-Ter Management Co.
 Before: FEINBERG, VAN GRAAFEILAND and WINTER, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Transportation Capital Corporation ("TCC") appeals from a judgment of the United States District Court for the Southern District of New York (Conner, J.) awarding attorney's fees to plaintiffs' attorneys in the amount of $421,532.30. See 831 F.Supp. 1058 (S.D.N.Y.1993). This amount includes fees for services in both the underlying action and the application for fees itself. We affirm the portion of the award which represents the former and reverse the portion of the award attributable to the latter.
 
 
 2
 The underlying action which gave rise to the application for fees is described at length in the district court's opinion. In short, it was a derivative action brought by the above-captioned plaintiffs against Melvin, Dorothy and Jonathan Hirsch, directors of TCC, and, of course, TCC. The suit resulted in a settlement agreement pursuant to which the Hirsches were removed as directors of TCC and forced to return a substantial amount of money to the corporation. The district court found that the monetary benefits which accrued to the corporation from the derivative suit were in excess of $1 million. In addition, the district court found that various non-monetary benefits had resulted from the suit, including the removal of the Hirsches as directors, the re-emergence of TCC as a viable entity, and improved loan provisions in TCC's financial statement. 831 F.Supp. at 1071.
 
 
 3
 For ease of discussion, we treat separately the issues of the fees and expenses incurred in the underlying action and the fees and expenses incurred in the application for fees.
 
 The Underlying Action
 
 4
 The standard of review of an award of attorney's fees is highly deferential to the district court. Seigal v. Merrick, 619 F.2d 160, 161 (2d Cir.1980). "Because attorney's fees are dependent on the unique facts of each case, the resolution of this issue is committed to the discretion of the district court." Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir.1992). As Justice Brennan, concurring in part and dissenting in part in Hensley v. Eckerhart, 461 U.S. 424, 454, 103 S.Ct. 1933, 1950, 76 L.Ed.2d 40 (1983), a section 1988 case, said: "Paragraph-by-paragraph scrutiny of the explanations for specific exercises of the district courts' broad discretion ... serves no productive purpose...." As a general rule, so long as the district court has applied the correct criteria, its decision will withstand scrutiny.
 
 
 5
 In the instant case, appellant does not seriously contend that the district court applied the wrong criteria. Its challenges are no more than a variety of requests to rule differently, which boil down to claims of factual error. Indeed, allegations of "clear error" and "abuse of discretion" appear throughout appellant's 50-page brief. However, even if we disagreed with some of the district court's findings, which we do not, we must bear in mind that it is not our function to decide factual issues de novo. See Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Because our review of the record and Judge Conner's comprehensive and well-reasoned opinion satisfies us that Judge Conner made no clearly erroneous findings of fact and since it is clear that he used the correct criteria in applying his factual findings, we have no hesitancy in affirming his fee award in the underlying action. See In re "Agent Orange" Prod. Liability Litigation, 818 F.2d 226, 237-38 (2d Cir.1987).
 
 The Fee Application Award
 
 6
 Appellant's objection to the award of fees for litigating the issue of a fee award is based on its contention that "[t]here exists no basis in law or fact" for such an award. Accordingly, we appropriately may subject this portion of the district court's award to de novo review.
 
 
 7
 Actions in which such attorney's fees are sought fall into two general categories. Those cases that traditionally have been referred to as "common fund" cases do not permit an award of fees for work performed in the fee application process. See, e.g., United States v. 110-118 Riverside Tenants Corp., 5 F.3d 645, 646 (2d Cir.1993) (per curiam); Peter Fabrics, Inc. v. S.S. "Hermes", 765 F.2d 306, 317 n. 5 (2d Cir.1985); City of Detroit v. Grinnell Corp., 560 F.2d 1093, 1102 (2d Cir.1977). On the other hand, fees for services performed in the fee application have at times been permitted in cases involving awards under statutes such as 42 U.S.C. Sec. 1988. See, e.g., Gagne v. Maher, 594 F.2d 336, 344 (2d Cir.1979), aff'd, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); see also New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir.1983).
 
 
 8
 The rationale for not allowing fees for the application process in a "common fund" case is that the fund, created for the benefit of a group or class, which already has been diminished by an award of fees, should not be further diminished by an additional award for work performed in fee applications. This Court recently has reaffirmed the proposition that fees in common fund cases be awarded only for expenses that benefit the fund. Riverside, supra, 5 F.3d at 646-47; see also Grinnell, supra, 560 F.2d at 1102. In short, in the action-in-chief, the attorney is working for the class and therefore should be compensated by it, whereas in the fee application portion, the attorney is working solely for himself and his work conveys no benefit to the fund. See, Grinnell, supra, 560 F.2d at 1102.
 
 
 9
 In the statutory cases, the fee award is not being paid from a fund created for the benefit of plaintiffs, but rather by the wrong-doer. Thus, an increase in the fee award does not diminish recovery by the injured parties. See Gagne, supra, 594 F.2d at 344.
 
 
 10
 TCC contended below that the instant suit was a "common fund" suit and that the fees incurred in the fee application process therefore should be excluded from the calculation of the fee award. The district court held, however, that this derivative suit was distinguishable from a traditional common fund case because it was not a class action suit:
 
 
 11
 The common fund cases referred to by TCC, however, are traditionally class actions where a sum of money is recovered for the class. To the extent attorneys fees are paid out of the common fund, an award for fee applications would further reduce the amount distributable to the class. The instant action, on the other hand, is a derivative suit that resulted in monetary and non-monetary benefits for the corporation, which form the basis for an award of legal fees. Thus TCC fails to convince us that fees for time devoted to this application should be entirely disallowed on this basis.
 
 
 12
 831 F.Supp. at 1077-78.
 
 
 13
 We are not persuaded by this distinction. While it is true that in class actions a fee award depletes the amount by which the class is benefitted, the same is true in a derivative suit, where the amount by which the corporation is benefitted will be depleted by the fee award.
 
 
 14
 In any event, this Court previously has addressed this exact issue and declined the invitation to treat derivative and class action suits differently for this purpose. As Judge Friendly stated in Seigal, supra:
 
 
 15
 [Applicant] recognizes that work on a fee application is not to be counted when the fee will reduce the fund obtained in a class action but claims there is a significant difference with respect to a derivative suit. There is no such difference since the diminution of corporate assets through fee awards in derivative suits is essentially similar to the diminution of a fund through such awards in class actions.
 
 
 16
 619 F.2d at 165.
 
 
 17
 Accordingly, while there may be some apparent inequity where, as here, the benefit of a fee award has been whittled away by an appellant who converts the fee application into a six-day proceeding and then engages in a lengthy factual argument on appeal, established Circuit law makes our decision clear. We reverse the district court's award of fees incurred in the fee application process.
 
 
 18
 In summary, we affirm the district court's award of attorney's fees applicable to the action-in-chief and reverse the award applicable to the fee application. Because the district court enumerated separate figures for each fee applicant in each category, we are able to calculate the resulting adjusted awards. Applicant Tanner's award of $305,116.90 should be adjusted to $277,666.90, which amount represents the original award minus the $27,450.00 that had been awarded for the fee application process. Applicant Fernbach's award of $78,787.00 should be adjusted to $61,042.00 to reflect the subtraction of $17,745.00 attributable to the fee application process. Finally, applicant Bagwin's award of $37,628.40 should be adjusted to $30,079.20 to reflect the subtraction of $7,549.20 attributable to the fee application process. The total amount awarded thus will be adjusted from $421,532.30 to $368,788.10.
 
 
 19
 So ordered.