166 F.3d 456
 Leon J. SAVOIE and Marion Savoie,
Plaintiffs-Appellants-Cross-Appellees,
v.
MERCHANTS BANK, Merchant Bancshares, Inc., Merchants Trust
Company, Dudley H. Davis, William K. Mulhern, Susan J.
Moses, Bruce Butterfield, Raymond C. Pecor, Jr., Fred G.
Smith and Robert A. Skiff, Defendants-Appellees-Cross-Appellants.
 Nos. 171, 356, Dockets 97-9032, 97-9414.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 23, 1998.
Decided Jan. 28, 1999.
 
 Dennis J. Johnson, South Burlington, VT (L. Randolph Amis, III, Burlington, VT, on the brief), for Plaintiffs-Appellants-Cross-Appellees.
 Robert B. Hemley, Burlington, VT (Norman Williams, Gravel and Shea, on the brief), for Defendants-Appellees-Cross-Appellants.
 Before: NEWMAN and JACOBS, Circuit Judges, and BURNS, District Judge.*
 JACOBS, Circuit Judge:
 
 
 1
 In this putative class action, filed in 1994, plaintiff Leon Savoie[1] sued defendants Merchants Bank and various related entities (collectively, "Merchants") in connection with their ruinous investment of customer funds in the Piper Jaffray Institutional Government Income Portfolio ("Piper Fund"). Shortly after commencement of suit, Merchants paid $9.2 million to reimburse customers for their losses in the Piper Fund investment. In an order that the defendants have not appealed, the United States District Court for the District of Vermont (Murtha, Ch. J.) concluded that Savoie's counsel was entitled to attorneys' fees because the suit was a substantial cause of Merchants' $9.2 million payment. On appeal, Savoie contends that the district court erred by (1) calculating the $98,605.62 fee award according to the lodestar method rather than as a percentage of the fund; (2) declining to award fees for the period following Merchants' announcement that the $9.2 million payment would be made; (3) determining that one of the lawyers was entitled to an hourly rate of $200 per hour; and (4) refusing to award interest on the award. Savoie also contends that the clerk of the court for the District of Vermont erred by entering judgment dismissing the action "with prejudice" when, in ordering the entry of judgment, the district court stated only that dismissal was warranted because the action is moot. Merchants cross-appeals from the dismissal of its motion to add new plaintiffs.
 
 
 2
 We affirm in all respects except that we remand to correct the judgment, which the clerk of court should not have entered "with prejudice."
 
 BACKGROUND
 
 3
 In 1993, Merchants invested money it held in trust for its customers in shares of the Piper Fund. After the investment suffered substantial losses, Savoie--one of Merchants' customers--filed this action against Merchants, alleging that, by investing in the Piper Fund, Merchants had, inter alia, violated federal securities laws and the Racketeer Influenced and Corrupt Organizations Act.[2] Savoie's complaint was filed on October 25, 1994. On November 28, 1994, Merchants announced that it intended to pay its customers $9.2 million in an effort to restore the losses they sustained as a result of Merchants' investment in the Piper Fund. Merchants maintained, however, that the payment was not being made in settlement of Savoie's class action. Rather, according to Merchants, the reimbursement of its customers was prompted by its business decision to "restore trust and confidence" in Merchants.
 
 
 4
 After the announcement, Savoie promptly asked the district court to order Merchants to place $500,000 of the $9.2 million in escrow to assure that funds would be available if the court were later to determine that the lawsuit was a substantial cause of the $9.2 million payment and that Savoie therefore was entitled to an award of attorneys' fees. Magistrate Judge Jerome J. Neidermeier conducted a hearing, and on December 16, 1994 recommended that the district court grant Savoie's request for injunctive relief.
 
 
 5
 On January 3, 1995, Merchants filed an objection to the recommendation, advising the district court that the issue was moot because--after the recommendation was issued--Merchants disbursed all of the promised $9.2 million to the members of the class. Judge T.F. Gilroy Daly--a judge of the District of Connecticut who was sitting by designation in Vermont and had temporary responsibility for the action--summoned the parties to an emergency status conference at which the judge expressed displeasure with Merchants for "unilaterally disobey[ing] and disregard[ing]" Magistrate Judge Neidermeier's recommendation, and ordered Merchants to place $500,000 in escrow by noon the following day. In a later order, Judge Daly adopted Magistrate Judge Neidermeier's conclusion that Savoie was entitled to injunctive relief.
 
 
 6
 On May 9, 1996, this Court affirmed Judge Daly's adoption of Magistrate Judge Neidermeier's recommendation. See Savoie v. Merchants Bank, 84 F.3d 52 (2d Cir.1996) ("Savoie I "). We acknowledged that a party that has secured a benefit on behalf of itself and others is entitled to recover costs, including attorneys' fees, from the common fund, see id. at 56; reasoned that the district court's preliminary injunction would have been affirmable if it had been issued before the distribution of the $9.2 million, see id. at 58; and concluded that no different result was required by the fact that Merchants distributed the money "after the injunction was sought and recommended by the Magistrate Judge but before it was ordered by the District Court," id. at 58, 60. We therefore affirmed entry of preliminary relief and remanded for a determination as to whether Savoie's lawsuit was a substantial cause of the $9.2 million payment, in which case Savoie would be entitled to an award of fees. See id. at 60-61.
 
 
 7
 During the pendency of the Vermont litigation, a federal securities class action suit against Piper Jaffray, Inc. was commenced by Piper Fund shareholders in the United States District Court for the District of Minnesota. When the Piper litigation settled, Merchants--one of the plaintiffs--announced that, having already reimbursed its own customers by its $9.2 million payment, it intended to keep its award under the settlement.
 
 
 8
 In November of 1995, Savoie, acting on his own behalf and on behalf of those who purchased shares in the Piper Fund through Merchants, appeared in Minnesota and objected to the proposed Piper settlement on the ground that Merchants' $9.2 million payment had not made its customers whole, and that the proceeds of the Piper settlement should be paid directly to Merchants' customers rather than to Merchants itself. In August 1996, five additional Merchants customers--also represented by Savoie's counsel--joined in Savoie's objection.
 
 
 9
 Merchants responded to the objections of the additional five customers by moving to join them in the Vermont litigation. Magistrate Judge Neidermeier recommended that the joinder motion be denied, and Chief Judge Murtha adopted that recommendation.
 
 
 10
 On February 18, 1997, the district court in Minnesota entered its final order in the Piper litigation, ruling that the Piper settlement proceeds were properly paid to Merchants, that Merchants however would receive the money in its capacity as its customers' trustee, and that the court would decline to exercise jurisdiction over the question of who, under "state law of trusts and breach of fiduciary duty," would ultimately keep the money--Merchants or its customers. Savoie and the five other objectors appealed, and the Eighth Circuit affirmed. See In re Piper Funds, Inc. Institutional Gov't Income Portfolio Litig., No. 97-2132, 1998 WL 413986, at * 1 (8th Cir. July 24, 1998) (per curiam).
 
 
 11
 Magistrate Judge Neidermeier issued a Report and Recommendation in March 1997, concluding (after a hearing) that "the Savoie lawsuit was a cause, and a substantial cause, of the payment of the funds." Magistrate Judge Neidermeier recommended that the district court award Savoie attorneys' fees in the amount of 5.5 percent of the fund, plus interest accrued during escrow. On June 10, 1997, Chief Judge Murtha adopted Magistrate Judge Neidermeier's causation finding, but rejected the percentage-of-the-fund recommendation and decided that the attorneys' fee amount should be calculated by the lodestar method. The district court therefore directed Savoie to file a "renewed request for an award of attorney's fees" supported by contemporaneous time records. The briefing schedule allowed Merchants to respond but barred reply briefs.
 
 
 12
 On August 13, 1997, Chief Judge Murtha issued an order awarding Savoie $62,410.62 in fees and costs, representing the lodestar amount, enhanced by a multiplier of two, for services rendered to the date Merchants announced its intention to make the $9.2 million payment. Merchants then moved pursuant to Federal Rule of Civil Procedure 60(b), asking the district court to correct a mathematical error in the fee calculation, and renewing its request that the action be dismissed as moot.
 
 
 13
 On September 23, 1997, Chief Judge Murtha adjusted the fee award to $98,605.62, and dismissed the action as moot. In dismissing the action, the judge did not specify that the dismissal was with prejudice. On September 29, 1997, the clerk of the court entered judgment dismissing the action "with prejudice."
 
 
 14
 On appeal, the parties raise a score of issues, many of which are insubstantial. We affirm as to all issues except that we vacate the judgment to the extent that it states that the dismissal was "with prejudice" and remand to allow the district court to issue a new order with respect to the question of whether the action should be dismissed with or without prejudice. In this opinion, we address only certain of the issues relating to fees, as well as Merchants' argument that the district court erred by refusing to grant its joinder motion.
 
 DISCUSSION
 I. Fees
 
 15
 "We review awards of attorneys' fees for abuse of discretion," see Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir.1998), and find no such abuse here.
 
 
 16
 A. The District Court's Use of the Lodestar Method
 
 
 17
 A party whose initiative confers a benefit upon a class of people is entitled to recover its costs--including attorneys' fees--from the common fund. See Savoie I, 84 F.3d at 56. In implementing the common fund doctrine, courts have used two different methods to ascertain how much of the common fund will be expended as attorneys' fees. The lodestar method is to "multiply[ ] the numbers of hours expended by each attorney involved in each type of work on the case by the hourly rate normally charged for similar work by attorneys of like skill in the area" and, "[o]nce this base or 'lodestar' rate [is] established," to determine the final fee by then deciding whether to take into account "other less objective factors, such as the 'risk of litigation', the complexity of the issues, and the skill of the attorneys." City of Detroit v. Grinnell Corp., 560 F.2d 1093, 1098 (2d Cir.1977). The other method is a simpler calculation of the fee award as some percentage of the fund created for the benefit of the class. See Blum v. Stenson, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984).
 
 
 18
 The district court observed that Second Circuit precedent requires lodestar calculation "in most cases," and applied that method to arrive at the attorneys' fees in this case. On appeal, Savoie argues that the district court should have adopted Magistrate Judge Neidermeier's recommendation that the attorneys' fee be 5.5 percent of the $9.2 million fund, about $500,000.[3]
 
 
 19
 As the district court observed, this Circuit has approved the use of the lodestar method in common fund cases. See In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 216, 222 (2d Cir.1987). Although the Supreme Court has implied that the percentage-of-the-fund method is a viable alternative, see Blum, 465 U.S. at 900 n. 16, 104 S.Ct. at 1550 n. 16, we conclude that this is an inappropriate case in which to consider the application of that alternative.
 
 
 20
 The percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases. See, e.g., Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 254-59 (1985) (hereinafter "Third Circuit Task Force"). It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method. See id. at 258. For the same reason, the percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.[4] See id. (The incentives for defense counsel to delay apparently remain unaffected.)
 
 
 21
 Of course, the lodestar fee can be calculated in ways that prevent compensation for unnecessary time. See In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir.1987) ("In order to ... temper these awards to prevent windfalls, we have adopted a lodestar formula for calculating fees in equitable fund and statutory fee contexts."). Moreover, here, the district court determined the amount of fees after Merchants announced the $9.2 million payment, and therefore after the lawsuit had become, for the most part, moot. Accordingly, in this case, the use of the percentage-of-the-fund method would have accomplished none of its anticipated benefits.
 
 
 22
 In light of the foregoing, we conclude that the district court's use of the lodestar method was not an abuse of discretion, and we therefore affirm.
 
 
 23
 B. The District Court's Refusal to Award Fees for the Time Period Following November 28, 1994
 
 
 24
 The district court denied Savoie's application for fees attributed to services rendered after Merchants announced its intention to make the $9.2 million payment. The district court did so on the sound principle that, because this is a common fund case, Savoie is not entitled to fees for the work his lawyers performed during the fee application process--sound, though in this case insufficient because Savoie maintained that certain of the work performed after November 28, 1994 was not performed in furtherance of the fee application, but rather was devoted to the class's interests.
 
 
 25
 In deciding whether to award fees for time spent by counsel in the fee application process, this Court draws a distinction between two types of cases. Where the fees will be drawn from a common fund, we have held that counsel is not entitled to fees for seeking fees, on the theory that "the fund, created for the benefit of a group or class, which already has been diminished by an award of fees, should not be further diminished by an additional award for work performed in fee applications." See Mautner v. Hirsch, 32 F.3d 37, 39 (2d Cir.1994). We have, however, permitted the award of fees for seeking fees in statutory fee cases, reasoning that in such cases the fee is being paid not by the plaintiffs, but rather by the wrongdoer. See id.
 
 
 26
 On this appeal, Savoie invites us to treat his action as a "hybrid," having characteristics of both kinds of cases, because as a result of Merchants' decision to distribute the entire $9.2 million without placing $500,000 of that amount in escrow as Magistrate Judge Neidermeier recommended, the money later placed in escrow, pursuant to Judge Daly's order, belonged to Merchants, not to the class. Savoie argues in support that our opinion affirming the entry of the preliminary injunction relied on the principle that a court can order restoration of the status quo ante if a defendant with notice of an injunction proceeding nevertheless takes the actions sought to be enjoined. See Savoie I, 84 F.3d at 58. From this Savoie deduces that: Merchants acted at its peril when it distributed the $9.2 million without an escrow for attorneys' fees; the money Merchants later escrowed therefore should be deemed to belong to Merchants rather than to the class; any award his lawyers receive out of the fund will be paid out of the wrongdoer's pocket rather than by the victims; and this case in that way resembles a statutory fee case, in which counsel should be compensated for fees for seeking fees.
 
 
 27
 We disagree. Nothing in Savoie I compels the conclusion that Merchants' precipitous disbursement of the whole $9.2 million rendered it liable for Savoie's attorneys' fees. To the contrary, Savoie I placed upon Merchants the burden of collecting those fees from the class. Savoie I relied on two alternative lines of reasoning. First (as Savoie emphasizes), we invoked the principle that " 'where a defendant with notice in an injunction proceeding completes the acts sought to be enjoined the court may by mandatory injunction restore the status quo.' " Savoie I, 84 F.3d at 58 (quoting Porter v. Lee, 328 U.S. 246, 251, 66 S.Ct. 1096, 1099, 90 L.Ed. 1199 (1946)). We acknowledged that--from Merchants' point of view--the status quo could be restored only if Merchants were able to fund the escrow by recapturing $500,000 from its customers, and that an order requiring Merchants to place $500,000 of its own money into escrow would be a departure from the status quo. We nevertheless concluded that Judge Daly's order was appropriate, not (however) because Merchants' conduct rendered it obligated to pay Savoie's fees, but because "the difficulty of [recapturing the funds from Merchants' customers] (because of either practical considerations, the risk of displeasing its customers, or whatever limitations Vermont trust law might impose) is properly laid at the doorstep of [Merchants], which acted precipitously, not the plaintiffs, who appropriately pursued their legal remedies." Id. at 59. Alternatively, we concluded that the injunction was proper if Merchants could be viewed in conceptual terms as having distributed $500,000 of its own money to its customers--an amount it may or may not be able to recoup--while depositing in escrow $500,000 that represents funds of the class. See id.
 
 
 28
 This characterization of the escrowed funds as funds of the class is conceptual, but it is also of practical and financial significance. There is a question, unresolved by the district courts in Vermont and Minnesota, and unpresented on this appeal, as to who is entitled to keep the proceeds from the Piper settlement--i.e., will Merchants be allowed to use that amount to offset its $9.2 million payment to its customers, or (as Savoie has repeatedly contended) does the fund properly belong to Merchants' customers? If the court that eventually decides that question rules in favor of the customers (in whole or part), it may in the process allow Merchants to offset the award by any amount previously paid in attorneys' fees. We therefore decline Savoie's invitation to characterize this case as a hybrid (between a common fund case and a statutory fee case) on the (invalid) premise that any amount paid in attorneys' fees will necessarily come from Merchants' pocket.
 
 
 29
 Savoie vigorously protests that by denying fees for seeking fees, the district court has allowed " 'a deep pocket losing party to dissipate the incentive provided by an award through recalcitrance and automatic appeals.' " Appellant's Brief at 36 (quoting Gagne v. Maher, 594 F.2d 336, 344 (2d Cir.1979) (internal quotation marks omitted), aff'd, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)). Perhaps. But it is not obvious that Merchants is an intransigent, diehard litigant. It is undisputed that Merchants' $9.2 million payment, which mooted this case and on which the fee application is based, was disbursed by Merchants almost immediately after the filing of the complaint. Savoie characterizes that payment as a tactical yielding, a sort of jujitsu maneuver in an aggressive program to punish Savoie's lawyers. But the district court, which heard that argument, made no such finding, and we think that the district court is in a superior position to decide whether perverse incentives are at work in this case.[5]
 
 
 30
 Finally, Savoie contends that the attorney time spent on this case after November 28, 1994 was not confined to the fee application process, and argues that at a minimum, his counsel should be compensated for time spent pursuing benefits for the class. Unfortunately, the district court did not address this issue. "[W]hen the court concludes that certain hours are not deserving of compensation, it must ordinarily state its reasons for excluding those hours 'as specifically as possible' in order to permit meaningful appellate review." Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir.1998) (citation omitted). We nevertheless affirm. Although Savoie argued to the district court that some of the attorney time invested post-November 28, 1994 was not related to the fee application, Savoie made no effort to break out for the district court which hours were fee-related and which were spent pursuing benefits for the class. Instead, he informed the court that in order to award fees for work other than fee applications in the period post-November 28, 1994, the court would have to (1) award fees for all time billed in that period, including time spent on the fee application; or (2) review on its own all the time records in order to ascertain how many hours were spent on the fee application process and how many hours were spent "solely or simultaneously protecting the class' interests."
 
 
 31
 As the party seeking fees, Savoie bore the burden of "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." See Cruz v. Local Union Number 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir.1994) (internal quotation marks omitted). Given Savoie's complete failure to inform the court which of the hours following November 28, 1994 were spent pursuing the interests of the class and which were spent on the fee application process, we cannot conclude that the district court abused its discretion in declining to award him compensation for that time. Cf. Gierlinger, 160 F.3d at 880. The district court's refusal to award fees for the time period following November 28, 1994 is affirmed.
 
 C. Johnson's Hourly Rate
 
 32
 On appeal, Savoie argues that the district court's lodestar calculation undervalued the services of Dennis Johnson, Esq., at $200 per hour. We disagree.
 
 
 33
 In calculating the lodestar fee, district courts generally must apply prevailing market rates "for comparable attorneys of comparable skill and standing in the pertinent legal community." See Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir.1998). Savoie contends that Johnson was entitled to $350 per hour--an hourly rate that (as both sides agree) is higher than the rate normally charged by lawyers in Vermont--because (1) there exist "no attorneys in Vermont with a practice focusing on derivative and/or securities class actions"; and (2) Johnson therefore should be compensated at a rate that is reasonable for "the legal community in which he practices, i.e., those engaging in securities class action litigation" elsewhere. The district court ruled that "Johnson cannot meet his burden of demonstrating entitlement to $350 per hour by summarily proclaiming he is the only attorney in Vermont capable of conducting securities litigation."
 
 
 34
 "[T]he burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984); see also Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir.1989). In arguing for the $350 hourly rate, Savoie did no more than cite a number of opinions in which courts in other districts have approved rates in that range for cases involving complex securities litigations. He submitted no evidence in support of his assertion that he is the only lawyer in Vermont capable of conducting this type of litigation.
 
 
 35
 On appeal, Savoie argues that any insufficiency in his presentation on Johnson's hourly rate is attributable to the district court's briefing schedule, which (according to Savoie) "inappropriately" prevented him from replying to Merchants' showing that there are Vermont lawyers who practice securities litigation and who charge $210 (or less) per hour for their services. Courts have substantial latitude to control their own calendars, and in this instance Savoie was placed on notice that no reply brief would be permitted and therefore that he would have to furnish an adequate basis for his application without relying on the opportunity to counterpunch. We have no difficulty concluding that Chief Judge Murtha properly found that Savoie had not met his burden of establishing that the prevailing rate for Johnson's services was $350 per hour. Savoie, who knew at the time he submitted his renewed fee application that he would have no reply, nevertheless included no evidence to support the claim that Johnson is the only lawyer in Vermont who is able to conduct this type of complex securities litigation. The district court did not err in finding that Savoie failed to sustain his burden.
 
 
 36
 D. Savoie's Request for an Award of Interest
 
 
 37
 Savoie argues that the district court erred in failing to grant interest on the fee award beginning in December of 1994, when Merchants distributed the $9.2 million payment. However, the rates consulted and used by the district court in calculating the award--as drawn from affidavits of Vermont lawyers, submitted by Merchants, specifying their hourly rates for securities litigation--were the current hourly rates charged by those lawyers, not the rates they charged in December of 1994. In that way, the court adequately compensated Savoie for the delay in payment. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir.1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment."). An award of interest on a lodestar fee calculated on the basis of current hourly rates would have resulted in overcompensation. Indeed, we have in the past acknowledged that use of current schedules to compute fees for legal work done in the past may sometimes in itself result in overcompensation of counsel. See Huntington Branch, NAACP v. Town of Huntington, 961 F.2d 1048, 1049 (2d Cir.1992) ("It would be unfair ... to use current rates where the services at issue were performed in protracted litigation and current inflated rates did not reflect with some degree of accuracy the loss attributable to delay."). We see no reason to conclude that the district court abused its discretion in declining to award interest.
 
 II. The Joinder Motion
 
 38
 Merchants' cross-appeal challenges the district court's denial of Merchants' motion for joinder of the five claimants who unsuccessfully objected to the Minnesota settlement. We see no merit to this argument. The Minnesota district court ruled that whatever claim the five objectors had to Merchants' share of the settlement was a matter for future litigation under state law of trusts. With the Eighth Circuit's affirmance of that ruling, the claim of the Minnesota objectors to proceed against Merchants under federal law came to an end. We need not consider whether Merchants could have brought the Minnesota objectors into this litigation at some earlier time. The Eighth Circuit's ruling now has a preclusive effect (both on the objectors and Merchants) that bars any further effort by them to sue Merchants under federal law and bars Merchants from bringing them into this litigation to defeat such a claim.
 
 CONCLUSION
 
 39
 We have carefully considered the remaining arguments on appeal and, with one exception, we find them to be without merit. The wording of the judgment that dismissed the action "with prejudice" appears to have been added by the clerk of the district court, and may or may not reflect the intention of the district judge, who gave no direction concerning the form of judgment in his opinion. The question of whether the dismissal should be with or without prejudice is one of some importance, because (on the one hand) dismissal with prejudice may bear upon the ability of the class to seek the proceeds of the Piper settlement, while (on the other hand) dismissal without prejudice may not accord with the position of Savoie's lawyer that this case is moot. To the extent the judgment states that the dismissal is with prejudice, it is vacated and remanded so that the district court may direct entry of a judgment that resolves this one open issue. If the court directs dismissal without prejudice, it might wish to consider giving further content to that phrase. In all other respects, the judgment of the district court is affirmed.
 
 
 
 *
 Honorable Ellen Bree Burns, of the United States District Court for the District of Connecticut, sitting by designation
 
 
 [1]
 At the inception of the lawsuit, Marion Savoie was also a named plaintiff. She has since died
 
 
 [2]
 Although the complaint was filed as a class action, no class was ever certified
 
 
 [3]
 Savoie also contends that the district court erroneously subjected Magistrate Judge Neidermeier's fee recommendation to a de novo standard of review, contrary to the requirement of Federal Rule of Civil Procedure 72 that the district court apply the more deferential clear error standard. As to fees, it is not at all clear that the district court did conduct de novo review. Moreover, for the reasons set forth in this opinion, we think that Magistrate Judge Neidermeier's fee recommendation would not withstand even deferential review. We therefore reject this argument
 
 
 [4]
 The use of the percentage-of-the-fund method also relieves the court of the "cumbersome, enervating, and often surrealistic process" of evaluating fee petitions, Third Circuit Task Force, 108 F.R.D. at 258, but that consideration does not arise on this appeal; the district court already has undertaken to calculate the lodestar fee
 
 
 [5]
 Savoie argued in the district court that if the attorneys' fees would be paid by the class out of the escrow, Merchants had no standing to litigate the amount of fees sought. This interesting point was not preserved for appeal