In re Peter J. GOULD, d/b/a Cherry Hill Development Co., Debtor.

Peter J. Gould, d/b/a Cherry Hill Development Co., Plaintiff,

v.

Lawrence S. Berger, U.S. Land Resources, L.P., Carlstadt Associates, Ltd., Keystone NJP IV, L.L.C., Defendants.

Bankruptcy No. 03–51180.
Adversary No. 04–05045.

United States Bankruptcy Court,
D. Connecticut.

Feb. 7, 2006.

Thomas J. Romans, Esq., Hackensack, NJ, Peter L. Ressler, Esq., Groob Ressler & McQueen, New Haven, CT, for the plaintiff.

Walter J. Fleischer, Jr., Esq., Michael J. Reynolds, Esq., Drinker Biddle & Reath, Florham Park, NJ, Matthew K. Beatman, Esq., Zeisler & Zeisler, Bridgeport, CT, for defendant Keystone NJP IV, L.L.C.

## MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT

ALAN H.W. SHIFF, Bankruptcy Judge.

Defendant Keystone NJP IV, LLC ("Keystone") brings this motion for summary judgment to dismiss the Second Count of plaintiff-debtor Peter J. Gould's December 7, 2004 complaint. For the reasons that follow the motion is granted.

### Background

The following material facts are not in dispute: [1]

On April 2, 1991, Lensclean, Inc. and Aldine Technologies, Inc. ("Tenants"), both wholly-owned by Gould, entered into a lease of warehouse space in a building located in Carlstadt, New Jersey ("Building") with Carlstadt Associates, Ltd. *Keystone's Statement of Material Facts,* dated June 27, 2005 ("Keystone Statement") ¶ 1, and Gould's corresponding answer, dated July 27, 2005. The first page of the lease identified both Tenants as Delaware corporations. *Keystone Statement* ¶ 3 and Gould's corresponding answer. Section 31 of the lease provided that the *"Tenant* shall have the option to purchase the Building"[2] (emphasis added) under certain defined conditions. *Keystone Statement* ¶ 5 and Gould's corresponding answer.

In December 2002, Gould gave Carlstadt a personal guaranty of the Tenants' obligations under the lease ("Personal Guaranty"). *Keystone Statement* ¶ 6 and Gould's corresponding answer. In March 2003, Keystone purchased the Building. *Keystone Statement* ¶ 7 and Gould's corresponding answer.

In June 2003, Keystone filed a summary dispossess complaint against the Tenants in a New Jersey court,[3] alleging unpaid rent. *Keystone Statement* ¶ 8 and Gould's

---

1. Some of these facts are inconsistent with the allegations made in the complaint. However, any such inconsistency has been superceded by the plaintiff's concessions in subsequent documents filed in this case. *See, e.g.,* Affidavit of Peter J. Gould in Opposition to Summary Judgment dated July 27, 2005. Additionally, Keystone submitted exhibits to the June 27, 2005 Declaration of Andrew C. White, Esq. in support of Keystone's motion for summary judgment. Those exhibits corroborate the undisputed facts in the record. There is no dispute as to the authenticity of these exhibits.

2. Both the corporate Tenants are referred to as a single tenant in the Lease.

3. The record is silent as to the name of this New Jersey court.

corresponding answer. In mid-August 2003, the Tenants were evicted by the order of that court. *Keystone Statement* ¶ 9 and corresponding Gould answer.

On August 22, 2003, Gould filed this chapter 11 case. On August 28, 2003, Keystone commenced an action for damages against the Tenants and Gould in the New Jersey Superior Court, Bergen County ("New Jersey court"). *Keystone Statement* ¶ 10 and corresponding Gould answer. On December 19, 2003 and January 16, 2004, the New Jersey court entered default judgments against the Tenants and Gould.[4] *Keystone Statement* ¶ 12 and Gould's corresponding answer.

On March 4, 2004, Gould wrote to Keystone and the New Jersey court to inform them that he had commenced this bankruptcy case. This was Keystone's first notice of Gould's bankruptcy. *Keystone Statement* ¶ 42 and Gould's corresponding answer. On the same date, Keystone wrote to the New Jersey court, with a copy to Gould's attorney, that it had learned for the first time that Gould had filed for bankruptcy, and that it would "withdraw [its] motion *as to Mr. Gould only* .... "[5] (emphasis in original). *Keystone Statement* ¶ 44 and Gould's corresponding answer. On March 31, 2004, Gould filed a motion and a "letter brief" in the New Jersey court to vacate the judgments against him.[6] *Keystone Statement* ¶ 46 and Gould's corresponding answer.

On April 22, 2004, Gould filed a contempt motion against Keystone in this court, alleging that it violated the automatic stay, *see* 11 U.S.C. § 362, by utilizing

New Jersey discovery procedures after the commencement of this case.[7] *Keystone Statement* ¶ 47 and Gould's corresponding answer. On July 27, 2004, Keystone filed a motion for relief from the automatic stay to remove property that had been left in the leased premises after the Tenants had been evicted. *Keystone Statement* ¶ 48 and Gould's corresponding answer. On July 28, 2004, Gould and Keystone entered into a Settlement Agreement and Stipulation ("Settlement Agreement") that was approved by this court on that date. *Keystone Statement* ¶¶ 49–55 and Gould's corresponding answers. The Settlement Agreement released Keystone from any and all liability "from the beginning of the universe to the date of the [Settlement Agreement]" arising out Keystone's actions as asserted in Gould's contempt motion and Keystone's motion for relief from the automatic stay. *See Settlement Agreement* ¶ 5. The Settlement Agreement further provided that Gould was given until August 4, 2004 to remove all remaining property from the Building. *Id.* at ¶ 3. However, if Gould did not remove all of the property by August 31, 2004, Keystone was authorized to "dispose or remove" such property without the further order of the court. *Id.* The property was not removed by Gould by the August 31, 2004 deadline. *Keystone Statement* ¶¶ 88–92 and Gould's corresponding answers; *Affidavit of Peter J. Gould in Opposition to Summary Judgment,* dated July 27, 2005 ("Gould Affidavit") ¶¶ 16–17.

The Second Count of Gould's complaint asserts six categories of relief, *see Com-*

---

4. The record is silent as to why two judgments were entered against both the Tenants and Gould.

5. The motion discussed in the letter has not been identified.

6. The outcome of this motion has not been put into the record.

7. Rule 6:7–2 of the New Jersey Rules of Court allows an entity to seek financial information about an adversary pursuant to information subpoenas.

*plaint at 7—8:* [8]

(1) to void the Personal Guaranty, *See* ¶ (a),

(2) to have the New Jersey judgments against him be declared void *ab initio, See* ¶ (b),

(3) to disallow Keystone's $761,646.04 claim in this bankruptcy case, *See* ¶¶ (c) & (g),

(4) to recover damages for the alleged conversion of his property left in the Building, *See* ¶ (d),

(5) to transfer title to the Building to him for the same price that Keystone paid for it, and to offset any damages awarded to him against the price, *See* ¶¶ (e) & (f), and

(6) to retrain Keystone from criminally prosecuting him. *See* ¶ (h).

### Discussion

*Summary Judgment Standard*

Keystone bears the burden of establishing that there are no genuine issues of material fact in dispute and that it is entitled to judgment on the Second Count as a matter of law. *See* F.R.Bankr.P. 7056. Unlike a motion to dismiss for failure of a pleading to state a claim on which relief can be granted, *see* F.R.Bankr.P. 7012(b)(6), parties to a motion for summary judgment may present matters outside the pleadings for the court's consideration.[9]

As the Second Circuit has held, "only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). Further,

the court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party," *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992). But a nonmoving party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which [a trier of fact] could reasonably find for the plaintiff.").

*Personal Guaranty—¶ (a)*

■ Paragraph 14 of the complaint alleges that, "Lawrence Berger [representing Carlstadt] requested [Gould] to personally guaranty the [T]enants' obligations to pay rent under the lease...for the sole and limited purpose of showing it to the foreclosing mortgagee and using it to persuade the mortgagee from foreclosing." Gould further alleged that he only complied for "purposes of forestalling the foreclosure". *Complaint* ¶ 15.

Gould now seeks a declaratory judgment that the Personal Guaranty is nullified for the reason that it was a so-called "single-purpose" guaranty, and it therefore could not be enforced by Keystone. Keystone, on the other hand, argues that the Personal Guaranty is clear on its face, and it is silent as to a single purpose.

---

**8.** The complaint consists of nine unnumbered pages.

**9.** Here, matters outside the pleadings include Keystone's June 27, 2005 Statement of Material Facts, Gould's July 27, 2005 correspond-

ing answer, Gould's July 27, 2005 affidavit, and declarations dated June 27, 2005 by Andrew C. White, Esq., Linda Correll and Michael Reynolds, Esq., along with corresponding exhibits.

■ When the terms of a contract, e.g., the Personal Guaranty, are clear and unambiguous, courts in this circuit may not look beyond the four corners of the contract to interpret the parties' intentions. *See John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994); *Metropolitan Life Ins. Co. v. RJR Nabisco*, 906 F.2d 884, 889 (2d Cir. 1990).

The Personal Guaranty is unambiguous. The simple fact is that the allegations of Gould's complaint do not square with the plain language of the document, which states that Gould provided a "personal guaranty for the payment of *all sums* . . . and the obligations of Tenant under the Lease . . . ." (emphasis added). *See Personal Guaranty* ¶ 2.

■ Moreover, Gould does not allege, and there is no basis for concluding, that the Personal Guaranty was involuntary. *See Gould Affidavit*, ¶ 23 ( "I . . . gave my guaranty to Mr. Berger . . . . "). Where a party willingly entered into a contract that is clear on its face, courts will not undo the agreement simply because that party is unsatisfied with its bargain. *See John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994).

*New Jersey Default Judgments Against Gould—¶ (b)*

■ Gould also seeks a declaratory judgment that the default judgments against him in the New Jersey Action be declared void *ab initio*. Keystone responds that those judgments have been vacated by the New Jersey court. *See Keystone's Reply Brief* dated August 4,

2005 at 8. However, the record is silent as to that occurrence.

Nonetheless, the issue raised by the relief sought in paragraph (b) is not justiciable. Whether the New Jersey judgments were vacated at Keystone's request or they are void as a matter of law, *see* 11 U.S.C. § 362, they are not viable.

*Keystone's Claim in Gould's Bankruptcy Case—¶¶ (c) & (g)*

■ Gould seeks to disallow Keystone's claim in this case, *see* 11 U.S.C. § 502, because it was "predicated upon the New Jersey State Court [default] judgment[s] and for additional interest and charges, all of which [Gould] disputes as being erroneous, unlawful, and void ab initio." *Complaint* ¶ 46. The predicate for this relief is the avoidance of the default judgments, as discussed above, but there is nothing in the record to support Gould's allegation that Keystone's claim was in fact premised on the default judgments. To the contrary, as Keystone argues, its claim was based on the Personal Guaranty.

■ An examination of Keystone's September 29, 2004 proof of claim [10] corroborates the unchallenged fact that in the "Basis for Claim" section of its proof of claim, Keystone stated "Other: Personal Guaranty". Keystone also attached the Personal Guaranty as Exhibit A to its proof of claim.

*Conversion of Personal Property—¶ (d)*

■ Gould seeks "damages in an amount to be determined by this Court and which will reasonably compensate [him] for the conversion of his equipment, machinery and property by Keystone." *Complaint* at 8, ¶ (d).[11] That prayer for

---

**10.** The court takes judicial notice of the proof of claim. *See* Rule 201, Fed.R.Evid. *See also, Rothman v. Gregor*, 220 F.3d 81, 91 (2d Cir. 2000) (Taking judicial notice of complaint as public record).

**11.** The court takes judicial notice of the motion. *See supra*, n. 10.

relief corresponds to paragraph 42 of the complaint which alleges that "[f]ollowing Keystone's eviction of [Gould], Keystone unlawfully seized and converted [Gould's] property and equipment located in or around the Building, and Keystone has refused to return same to [Gould] in spite of repeated demands that it do so."[12] That allegation is premised upon the claims that it was Gould who was evicted, and it was Gould's property in the Building. Those claims have been invalidated by the fact that the Building was rented to the Tenants and it was the Tenants who were evicted. *See supra* at 752–753. Nonetheless, for the reasons that follow, the relief sought by Gould is premised by nothing more than his naked assertions in ¶ (d).

*Pre July 28, 2004*

■ Keystone argues that any claims for conversion which arose prior to July 28, 2004 were released by the Settlement Agreement and the corresponding order of this court. Paragraph 5 of the Settlement Agreement, provided that Gould did

> fully, finally and forever release... Keystone ... from any and all claims ... causes of action ... damages ... and liabilities of every nature, character and description whatsoever ... from the beginning of the universe to the date of this Agreement, *related to* the [Gould's] contempt motion and [Keystone's] motion for relief from stay.

(Emphasis added)

Keystone argues, and there is nothing in the record to the contrary, that the only instance in which it removed property left by the Tenants after their eviction was prior to July 28, 2004. Keystone states that it removed property left by the Tenants from the parking lot of the Building in June 2004 in preparation for a new tenant. *See Keystone Statement* ¶ 38. Even if that removal might support a conversion of Gould's property (as distinguished from the property of the Tenants), and no such assumption is warranted, it is clear that Gould released any and all claims relating to any such conversion of property up to July 28, 2004.

*July 28—August 31, 2004*

■ An equivalent conclusion is inescapable as to any conversion between July 28 and August 31, 2004. First, it is noted that Gould makes no specific claim that Keystone converted any property between those dates. He merely alleges that "following the eviction" in August 2003 Keystone converted property. Moreover, a review of the documents Gould submitted in opposition to Keystone's instant motion does not support any claim he may have that Keystone converted any property between July 28 and August 31, 2004.

Keystone states that other than its June 2004 removal of materials left in the Building parking lot it did not remove any property claimed to be owned by Gould. *See Keystone Statement* ¶ 39. Gould's response denies that statement, *see* Gould's corresponding answer to *Keystone Statement* ¶ 39, but he has not offered any relevant evidence from which a trier of fact could reasonably find in his favor. For example, Gould's denial references paragraph 17 of his affidavit, but that paragraph does not reference any actions taken by Keystone between July 28 and August 31, 2004. *See Gould Affidavit* ¶ 17.

---

**12.** Under New Jersey law, "the essential elements of the common-law action in conversion are (a) that the property and right to immediate possession thereof belong to the plaintiff; and (b) the wrongful act of interference with that right by the defendant." *First Nat. Bank of Bloomingdale v. North Jersey Trust Co.*, 18 N.J. Misc. 449, 14 A.2d 765, 767 (1940).

Furthermore, it is undisputed that on August 6, August 23, and August 27, 2004, Keystone tried to persuade Gould to remove his property by the August 31, 2004 deadline. *See Keystone Statement* ¶¶ 69, 72, 83 and Gould's corresponding answers. Gould also admits that the only time he or his counsel contacted Keystone or its representatives between July 28 and August 31 was on August 6th, to inform them that he would not be removing any property on that date. *See Keystone Statement* ¶¶ 62, 88–89 and Gould's corresponding answers; *Gould Affidavit* ¶ 17.

These undisputed facts demonstrate that Gould chose not to avail himself of the opportunity to remove the property he now claims was converted by Keystone. Accordingly, a trier of fact could not reasonably find that Keystone converted any property between July 28 and August 31, 2004. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of *factually unsupported* claims...") (emphasis added).

*Post July 28, 2004*

 Finally, there is no basis for a finding that Keystone converted any property after August 31, 2004. Indeed, a contrary conclusion is warranted. Gould does not dispute that paragraph 3 of the Settlement Agreement authorized Keystone to "remove or dispose all [property left in the leased premises] without further notice or approval by the court" if Gould failed to remove it by August 31, 2004. *See Keystone Statement* ¶¶ 56–57 and Gould's corresponding answers. As stated above, *supra* at 753, it is undisputed that Gould failed to remove the property by that deadline.

*The Right of First Refusal—¶¶ (e) & (f)*

 Gould requests that the court transfer title to the Building to him for the same price Keystone paid and any damages assessed for the alleged conversion of property be determined and offset against such purchase price. *See Complaint* ¶¶ 40—41. The basis for that remedy is the claim that Gould succeeded to the Tenants' leasehold right of first refusal to purchase the Building. *See Lease* § 31 ("Tenant shall have the option to purchase the Building....").

Gould claims that the Tenants' option to purchase the building was transferred to him when their corporate charters were purportedly revoked in 1996.[13] For that proposition, he originally cited *Kelly v. Alstores Realty Corp.*, 130 N.J. 313, 613 A.2d 1163 (1992). However, the *Kelly* case related to New Jersey corporations.

 Gould has admitted that the Tenants are Delaware corporations.[14] At oral argument he cited *City Investing Co. Liquidating Trust v. Continental Casualty Co.*, 624 A.2d 1191, 1194 (Del.1993) in support of his argument. Tr. of 11/08/2005 at 44. Keystone argued that *City Investing* supports its position, as does *Addy v. Short*, 89 A.2d 136 (Del.1952).

Keystone is correct. In *Addy*, the Supreme Court of Delaware held "...as concerns the property [the dissolved corporation] had at the time of dissolution, its title and possession are unimpaired. Whatever rights it had, of whatever nature, are pre-

---

13. Gould's July 27, 2005 brief in opposition to summary judgment states that the Tenants' charters had been revoked in 1996, but he has offered no evidence to support that statement. *See Brief in Opposition to Summary Judgment* at 6.

14. A corporation's status is determined by the laws of its state of incorporation. *See Kalb, Voorhis & Co. v. American Financial Corp.*, 8 F.3d 130, 132 (2d Cir.1993).

served in full vigor. . . ." *Id.* at 139. *City Investing* held that after a corporation is dissolved, "it remains a viable entity authorized to possess property. . . .". *City Investing Co. Liquidating Trust,* 624 A.2d at 1195. Accordingly, Gould did not succeed to the Tenants' right of first refusal.

*Criminal Prosecution of Gould—¶ (h)*

 Gould seeks to restrain "Keystone, its agents and attorneys from criminally prosecuting [him] any further with respect to issues relating to the Building or [the removal of his] property . . . from or remaining in the Building". *Complaint* at 8, ¶ (h).

There are two instances in which Gould was under threat of arrest. On March 5, 2004, the New Jersey court issued an order directing Gould, as the only officer, director and shareholder of the Tenants, to answer information subpoenas. *See Keystone Statement* ¶¶ 40–42, 45 and Gould's corresponding answer. Rule 6:7–(b)(2)(g) of the New Jersey Rules of Court states that "the court may issue an arrest warrant" if an entity does not respond to information subpoenas. The second incident occurred on September 20, 2004. It is undisputed that on that date Gould was at the Building and the property manager, Linda Correll, filed a criminal complaint against him for trespassing. *See Keystone Statement* ¶ 102 and Gould's corresponding answer. The State of New Jersey then prosecuted Gould and settled the matter by plea agreement.

Gould apparently believes that in the future Keystone might prosecute him in the New Jersey courts, but any such notion ignores that fact that prosecutorial authority is vested in the State of New Jersey and any such action would not be restrained by the automatic stay. *See 11*

U.S.C. § *362(b)(1).*[15] *See also, In re Anoai,* 61 B.R. 918 (Bankr.D.Conn.1986).

Perhaps Gould seeks an order from this court that would restrain Keystone from complaining to the prosecutorial authorities or cooperating with them in any criminal prosecution. If so, he has not offered and this court has not found any authority to support that proposition. In any event, the remedy Gould seeks is prospective, and there are no facts that would support any such relief, even assuming, which this court does not, such relief is cognizable.

For the foregoing reasons the Judgment shall enter in the Second Count in favor of Keystone NJP IV, L.L.C.; and

IT IS SO ORDERED.

## JUDGMENT ON DEFENDANT KEYSTONE NJP IV, LLC'S MOTION FOR SUMMARY JUDGMENT

Judgment shall enter in the Second Count in favor of Keystone NJP IV, L.L.C.

IT IS SO ORDERED.

---

**15.** Section 362(b)(1) excepts from the automatic stay the "commencement or continuation of a criminal action or proceeding against the debtor".