In re Peter J. GOULD, d/b/a Cherry Hill Development Co., Debtor.

Prologis Six Rivers Limited Partnership, as successor-in-interest to Keystone NJP IV LLC, Movant,

v.

Peter J. Gould, d/b/a Cherry Hill Development Co., Respondent.

No. 03–51180.

United States Bankruptcy Court, D. Connecticut, Bridgeport Division.

Feb. 28, 2007.

Michael J. Reynolds, Esq., Drinker, Biddle & Reath, LLP, Florham Park, NJ,

Matthew K. Beatman, Esq., Lawrence S. Grossman, Esq., Zeisler & Zeisler, P.C., Bridgeport, CT, Attorneys for the Movant.

Thomas J. Romans, Esq., Hackensack, NJ, Peter J. Ressler, Esq., Groob, Ressler & McQueen, New Haven, CT, Attorneys for the Debtor/Respondent.

## MEMORANDUM AND ORDER ON MOTIONS FOR ATTORNEYS' FEES AND COSTS

ALAN H.W. SHIFF, Bankruptcy Judge.

The matters before the court involve two motions by Prologis Six Rivers Limited Partnership ("Prologis") for attorney fees and costs.

## BACKGROUND

Regrettably, the issues raised in these motions have been protracted due to unreasonable objections by the chapter 11 debtor, Peter J. Gould, d/b/a Cherry Hill Development Co. ("Gould"). Gould has been a frequent litigator in this court. *See Gould v. Oakland Associates (In re Gould),* 363 B.R. 41, 2005 WL 2589183 (Bankr.D.Conn.2005); *Gould v. Berger (In re Gould),* 337 B.R. 750 (Bankr.D.Conn. 2006) [1]; *Gould v. S.S. Silberblatt, Inc. (In re Gould),* 339 B.R. 293 (Bankr.D.Conn. 2006), familiarity with which is assumed. Findings made in those actions are also relevant here.

On April 2, 1991, Lensclean, Inc. and Aldine Technologies, Inc., both wholly owned by Gould, entered into a lease with Carlstadt Associates, Ltd. for warehouse space in a building in Carlstadt, New Jersey. The lease provided that the "[t]enant[s] shall be liable to the Landlord for any and all reasonable attorneys' fees and other costs which the Landlord may incur as a result of successfully enforcing or protecting its rights against the Tenant[s]". Prologis's Exh. I, at p. 28. In December, 2002, Peter J. Gould executed a document by which he personally guaranteed "the obligations of the Tenant[s] under the Lease". Prologis's Exh. J, at p. 1. In March, 2003, Keystone purchased the building from Carlstadt Associates. Tr. at 25. On August 22, 2003, Gould commenced this chapter 11 case.

On November 16, 2004, in order to facilitate confirmation of his Second Amended Plan of Reorganization, Gould paid Keystone's claim for attorneys' fees and costs attributed to the enforcement of its rights under the lease. That is, Gould paid Keystone's claim pursuant to the court's order on his motion to distribute, however, he reserved the right to challenge the awarded fees and costs in an adversary proceeding. *See* Gould's Motion to Disburse, Doc. *Id.* No. 166.

The instant matters result from the following scenario. On December 7, 2004, Gould filed an adversary proceeding against Keystone ("Gould adversary proceeding"), seeking the return of the attorneys' fees and costs. *See Gould v. Berger, supra,* 337 B.R. at 753–54. On February 7, 2006, the court granted Keystone's motion for summary judgment, concluding that there was no basis upon which the attorneys' fees and costs should be disgorged. *Id.* at 758. On March 6, 2006, Prologis, which claimed to be the successor of Keystone, filed the first of the instant motions for attorneys' fees and costs incurred defending the Gould adversary proceeding ("Prologis motion 1"). Gould's objection required a further trial, as a con-

---

**1.** This adversary proceeding included allegations relating to rights under a lease and attorneys' fees also discussed herein.

sequence of which, Prologis now also moves for attorneys' fees and costs incurred prosecuting Prologis motion 1 ("Prologis motion 2")[2].

## DISCUSSION

### Liability for Attorneys' Fees and Costs

■ A party seeking attorneys' fees has "the burden of 'establishing entitlement to an award and documenting the appropriate hours expended and the hourly rates'". *Savoie v. Merchants Bank*, 166 F.3d 456, 463 (2d Cir.1999) (quoting *Cruz v. Local Union No. 3 of Intern. Broth. Of Electrical Workers*, 34 F.3d 1148, 1160 (2d Cir.1994) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983))).

### Fees and costs for Prologis motion 1

As a preliminary matter, Gould argues that Prologis is not the successor of Keystone. Post trial brief at p. 2. That challenge was not supported by the record. To the contrary, Prologis offered the testimony of its manager, Linda Correll, who identified the lease and the guaranty pursuant to which its attorneys' fees and costs were incurred. Tr. at 21, 23; *see also* Prologis's Exhs. I and J. She also testified that in August, 2004, Keystone merged with Prologis and contributed the building to Prologis Cimarron, NJ, L.L.C., an entity owned by Prologis. *Id.* at 27. According-

ing to her testimony, at the time of trial, Prologis Cimarron, NJ, L.L.C. owned the building and had given Prologis permission to sue on behalf of Prologis Cimarron for recovery of the attorneys' fees and costs at issue[3]. *Id.*

■ Alternatively, Gould argues that the fees and costs sought by Prologis are not related to its rights under the lease. Specifically, Gould challenges numerous line entries in Prologis's statement of fees and costs. *See* Exh. D. Again, the record demonstrates otherwise. For example, Gould disputes the services rendered in connection with Gould's request that Prologis be restrained "from criminally prosecuting [Gould] any further with respect to issues relating to the building"[4]. Tr. at 62. But, the criminal prosecution was prompted by Gould's trespass at the leased property. Therefore, Prologis's involvement, as a complaining property owner, was merely an enforcement of its rights under the lease. *See* Tr. at 62–63.

Gould also cross examined Prologis's attorney regarding the time and expense of a conference with Chicago Title Company regarding insurance issues. Prologis responded that this issue was related to enforcing rights under the lease because "Chicago Title was a title insurer on the purchase by [Prologis].... [Gould's] prayer for relief asked that the building be conveyed to Mr. Gould as part of the rights that he had under the right of first

---

2. On April 26, 2006, a pretrial order entered which required the parties to file and exchange lists of witnesses and exhibits. The order also required a short statement of the anticipated testimony of each listed witness, and the disclosure of any expert witnesses, as to whom, copies of expert reports were to be served. The pretrial order further provided that no party could call a witness who was not on its witness list. *See* April 26, 2006 Pretrial Order, at p. 2. Prologis complied with the order and listed witnesses and exhibits. Gould did not. Tr. at 18.

3. Hereafter, as Prologis is the successor of Keystone, services on behalf of Keystone are attributable to Prologis.

4. *See Gould v. Berger, supra,* 337 B.R. at 758 ("Gould apparently believes that in the future Keystone might prosecute him in the New Jersey courts, but any such notion ignores the fact that prosecutorial authority is vested in the State of New Jersey").

refusal in the lease. That certainly put a cloud on the title and we would have been remiss not to put the title insurer on notice". Tr. at 75–76.

### Fees and costs for Prologis motion 2

Prologis's motion 2 seeks attorneys' fees and costs incurred in the prosecution of its motion 1. *See* Prologis's Exh. A; *see also* Supplementary Affidavit of Prologis's attorneys, Doc. *Id.* No. 291, Exhs. 1 and 2. The law in this circuit supports that result. As the court in *Gagne v. Maher* held, "time reasonably spent by [parties] in establishing their fee[s]" may be allowed. 594 F.2d 336, 344 (2d Cir.1979), *aff'd on other grounds*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). To rule otherwise would "dilute the value of a fees award by forcing [the] attorneys into extensive, uncompensated litigation". *Id.* (quoting *Stanford Daily v. Zurcher*, 64 F.R.D. 680, 683–84 (N.D.Cal.1974), aff'd, 550 F.2d 464 (9th Cir.1977), rev'd on other grounds, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)).

### Reasonableness of Attorneys' Fees

Parenthetically, Prologis's success in its defense of the Gould adversary proceeding is a significant factor in the analysis of the instant motions. *See supra* at pp. 47, 48; *see also Smart SMR of New York, Inc.*, *supra*, 9 F.Supp.2d. at 148 ("the central question in determining the reasonableness of a fee request is the degree of success obtained") (citing *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley, supra*, 461 U.S. at 436, 103 S.Ct. 1933)).

Attorneys' fees are determined by calculating a lodestar, i.e., "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate". *Sands v. Runyon*, 28 F.3d 1323, 1333 (2d Cir.1994) (quoting *Hensley, supra*, 461 U.S. at 433, 103 S.Ct. 1933). When determining a lodestar, the court "generally must apply prevailing market rates 'for comparable attorneys of comparable skill and standing in the pertinent legal community'". *Savoie, supra*, 166 F.3d at 463 (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir.1998)); *see also Miele v. New York State Teamsters Conference Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir.1987).

The fee applicant bears the burden "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation". *Savoie, supra*, 166 F.3d at 463 (quoting *Blum v. Stenson, supra*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891). The Second Circuit has "warned ... attorney's fees are to be awarded 'with an eye to moderation,' seeking to avoid either the reality or the appearance of awarding 'windfall fees'". *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1139 (2d Cir.1983) (quoting *Beazer v. New York City Transit Authority*, 558 F.2d 97, 101 (2d Cir.1977) (internal quotation omitted)).

Prologis did not produce evidence regarding the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation". *Savoie, supra*, 166 F.3d at 463. But, "such information [is] not indispensable". *Cruz, supra*, 34 F.3d at 1160. The court may, at its discretion, "rely in part on the judge's own knowledge of private firm hourly rates in the community". *Miele, supra*, 831 F.2d at 409 (rejecting the contention that the court "must consider only the hourly rate data submitted into evidence"). When relying upon its own experience and knowledge to deter-

mine the reasonableness of the rates, a court may look to other findings and conclusions in the area it serves. *Smart SMR of New York, Inc., supra,* 9 F.Supp.2d at 149 (citing *Skubel v. Sullivan,* Civ. No. 90–279, 1998 WL 136176 at *3 (D.Conn. March 11, 1998)).

For example, in *McInnis v. Town of Weston,* 458 F.Supp.2d 7, 20 (D.Conn. 2006), the court awarded an attorney with approximately 30 years of experience in the area of employment discrimination who "was known to have achieved many substantial verdicts for her clients in this state", attorney's fees based on an hourly rate of $375/hour. (noting that this attorney was awarded a rate of $325/hour in 2002). For the paralegal time, the *McInnis* court noted "a broad range, between $50 and $95/hour, for paralegal time over the last few years [5]" in this district, and awarded $70/hour for paralegal time. *Id.* at 20. The district court also recognized that "attorneys in Fairfield County incur higher overhead costs due to their 'close proximity to New York' ". *Id.* at 20 (quoting *Omnipoint Communs., Inc. v. Planning & Zoning Com'n,* 91 F.Supp.2d 497 (D.Conn.2000)). This court has reviewed innumerable fee controversies and concludes that the lodestar in the Bridgeport Division of the District of Connecticut is equivalent to the lodestar in the Southern District of New York for attorneys of similar skill and experience.

### Prologis's attorneys Drinker, Biddle & Reath

#### Number of hours:

Gould's objection to the number of hours billed by Prologis's attorneys was limited to his cross examination of attorney Reynolds on three themes, i.e. the necessity of having multiple attorneys working on the case, Tr. at 59–60, the necessity of multiple attorneys working on a single motion, Tr. at 65–67, and the need for its out of state attorneys to travel to Bridgeport when it had hired local counsel, Tr. at 69–77.

Concerning the need for multiple attorneys, attorney Reynolds responded that "... it was necessary because of the nature of the claim that [Gould] made," i.e., "[Gould was] implicating bankruptcy matters ... trying to challenge judgements that had already been entered ... raising state law issues and ... raising issues under Delaware law that heretofore no one had even heard about". *Id.* at 59. Attorney Reynolds further testified about the use of multiple attorneys. Tr. at 44. He stated that there were several examples of meetings at which two attorneys were present; but, "only one attorney was billing". *Id.; see also* Prologis's Exh. D, pp. 1, 1–2, 4–5 (entries on December 10, 2004, December 14, 2004, and January 10, 2005).

With regard to multiple attorneys working on a single motion, attorney Reynolds responded that the "point of one attorney drafting and then another attorney reviewing, is to [give] input, suggest revisions, ask for additions, clarifications. So this is the normal process that our firm would take in drafting motions of the magnitude of dismissal motions or summary judgement motions". *Id.* at 66–67.

Finally, regarding the need for the Drinker attorneys to come to Connecticut when the client had retained local counsel, attorney Reynolds responded that at Drinker's request, Prologis retained local

---

**5.** Citing *DIRECTV, Inc. v. Neznak,* 371 F.Supp.2d 130 (D.Conn.2005); *Tsombanidis v. City of West Haven,* 208 F.Supp.2d 263, 276 (D.Conn.2002); *Cabrera v. G.T. Constr.,* 2006 U.S. Dist. LEXIS 29003, No. 3:05CV812 (MRK)(WIG), 2006 WL 1328767, at *1 (D.Conn. May 8, 2006); *Charter Communs. Entm't I, LLC v. Terzigni,* 2006 U.S. Dist. LEXIS 24845, No. 3:06CV41 (PCD), 2006 WL 1168595, at *3 (D.Conn. Apr. 27, 2006).

counsel for limited purposes, and that the attorneys from Drinker and Biddle attended court on important hearings. Tr. at 76–77.

■ The following factors support the conclusion that the number of hours expended by Prologis's attorneys was reasonable. Attorney Reynolds testified that "[t]here were numerous instances in the [Gould adversary proceeding] where [Gould] took actions that we believe[d] to be frivolous and actually vexatious [which] raised [Prologis's] fees ...". Tr. at 46. For example, in the Gould adversary proceeding Gould claimed that he had the right of first refusal, but at that same time, informed Prologis that Kopac International, another company owned by Gould, was also claiming the right of first refusal [6]. *Id.* He also testified that Gould's motion to compel [7] generated unnecessary fees for Prologis ("I informed [Gould's attorney] that [his] motion was frivolous, it was nonsensical. [Gould] had entered into a settlement agreement"). Tr. at 48–49. Another example related to the scheduling of the summary judgment hearing in Gould's adversary proceeding. Tr. at 49. According to attorney Reynolds, Gould "called the court and asked for a continuance in another Gould matter and somehow left the impression, or at least didn't disabuse [the court] of the idea that he was seeking a continuance for all Gould matters. [The court] granted the continuance, but we had never consented, nor were we even advised that the continuance had been granted". Tr. at 49–50. Accordingly, on the date of the scheduled hearing, attorneys Reynolds and Fleischer traveled to Bridgeport and met with attorney Beatman before going to court. Upon arrival, the three attorneys discovered that Gould had sought and obtained an ex parte continuance [8]. Tr. at 50.

The court concludes that in each instance, Prologis was justified in responding to Gould's claims. For example, it is noteworthy that Gould's claim that he had a right of first refusal on the Carlstadt property was raised and rejected by the court, *see Gould v. Berger, supra,* 337 B.R. at 758. Gould's contemporaneous and inconsistent assertion to Prologis of that right on behalf of Kopac necessitated a responsive reaction by Prologis. Gould's January 27, 2005 motion to compel, *see supra,* note 7, notwithstanding a settlement agreement regarding the subject property which the court approved on July 28, 2004, justified a response by Prologis even though the motion was frivolous. *See* Order Approving Settlement Agreement and Stipulation, Doc. *Id.* No. 132; *see also* Motion to Compel Keystone, Doc. *Id.* No. 218.

Having reviewed the billing records submitted by Prologis and the testimony of attorney Reynolds, and given the customary practice in the area served by this court, the court concludes that the number of hours billed by the Drinker attorneys in this matter is reasonable.

### *Hourly Rates:*

Attorney Reynolds testified that he and other Drinker attorneys, Walter Fleischer and Andrew White, provided services for Prologis in the Gould adversary proceed-

---

6. Gould informed Prologis that Kopac was claiming the right of first refusal in a bankruptcy petition, although such petition does not appear to have been filed.

7. Gould was asserting a motion to compel the return of abandoned property.

8. Following customary practice that an ex parte request for a continuance is only made with the consent of all adverse parties.

ing[9]. The applicable hourly rate of each is assessed in the context of his education, training, and experience. *See Cablevision of Southern Connecticut, L.P. v. Smith,* 141 F.Supp.2d 277, 281, 288 (D.Conn.2001). During all relevant times, Attorney Reynolds was a bankruptcy specialist, Walter Fleischer was a commercial litigator and a partner, and Andrew White was a sixth-year associate specializing in commercial litigation. Tr. at 37–38. The rates charged were "the same normal, reasonable rates that [Drinker] ... would charge for non-bankruptcy matters"; and every effort was made by the attorneys at Drinker to minimize legal fees incurred in this action. Tr. at 44.

The hourly rate charged by attorney Reynolds, who billed most of the hours, was $261.50/hour in 2005. His rate thereafter increased to $285/hour. *See* Tr. at 38, 59; *see also* Prologis's Exh. A, last unnumbered page. Attorney Reynolds testified as to his legal education, Tr. at 36, service as the law clerk for the bankruptcy judge, Novalyn L. Winfield, District of New Jersey, *id.* at 37, and employment at the Drinker law firm since 2001, *id.* at 36–37.

Attorney Fleischer initially billed at an hourly rate of $401.30 in 2005. His rate increased to $415/hour in 2006. *See* Tr. at 59; *see also* Prologis's Exh. A, at last unnumbered page. Attorney Fleischer's legal education included scholastic honors. Tr. at 37. Attorney Fleisher was not a primary attorney in the Gould adversary proceeding, billing less than twenty percent of the total number of hours billed by his firm. Tr. at 38; *see also* Prologis's Exh. D. Attorney White initially billed $265.41/hour in 2005, and thereafter increased his hourly rate to $300/hour. Tr.

at 59; *see also* Prologis's Exh. A, at last unnumbered page. In addition to a description of attorney White's education, attorney Reynolds testified that attorney White had been a sixth-year associate at Drinker. Tr. at 37, 38.

■ Based upon the education and years of commercial litigation experience of attorneys Fleischer and White, and the education and years of bankruptcy experience of attorney Reynolds, as well as the customary rates of attorneys in the Bridgeport Division of the District of Connecticut with similar education and experience, the court concludes that the hourly rates billed by the Drinker attorneys are reasonable. *See McInnis, supra,* 458 F.Supp.2d 7, 20; *see also Cablevision of Southern Connecticut, supra,* 141 F.Supp.2d at 281, 288.

### *Prologis's attorneys Zeisler & Zeisler, P.C.*

#### *Number of hours:*

Zeisler attorney Matthew Beatman testified that Zeisler made an effort to minimize fees. *Id.* at 91, 96. For example, although Craig Lifland was the original contact, attorney Beatman handled the case "because my rate was a little bit lower than his, and he thought it would be more prudent under the circumstances". *Id.* at 91–92. Further, to the extent that the work was not legal in nature, he "utilized the services of [his] paralegal, ... who bills" at a lower rate. *Id.* at 92.

Gould's cross examination of attorney Beatman was limited to a few questions and did not undermine the persuasiveness of his testimony. Tr. at 97–99. Upon review of the billing records submitted by

9. Attorney Reynolds testified upon cross examination that two other attorneys "had some billing on this matter". Tr. at 55.

Prologis, and the testimony of attorney Beatman, and given the customary practice in this market, the court concludes that the number of hours billed by Zeisler for the services provided by Prologis is reasonable.

### Hourly Rates:

Attorney Beatman, who testified about his "significant concentration in areas of bankruptcy", was retained as "local counsel initially to Keystone and then ... to Prologis ...". Tr. at 82–84. He testified that he and his paralegal, Rosa McCoy, provided services for Prologis. Attorney Beatman's hourly rate was $335/hour in 2005, and $350/hour in 2006. *Id.* at 83, 97. He testified that Zeisler billed for bankruptcy services at the same rates as for non-bankruptcy matters. *Id.* at 90. *See* Prologis's Exhs. A and G.

Attorney Beatman's education included scholastic honors. He served as a law clerk in this court in 1991, and as local counsel in more than ten other bankruptcy cases. He has been employed at Zeisler since 1992. Tr. at 82–84. He also testified that he has lectured on a variety of bankruptcy issues. Tr. at 83.

In consideration of attorney Beatman's educational background and years of experience as a specialist in bankruptcy cases, as well as the customary rates of attorneys in the area served by this court with similar education and experience, the court concludes that the hourly rates billed by attorney Beatman are reasonable.

■ Rosa McCoy initially billed at $90/hour in 2005; and subsequently at $100/hour in 2006. *See* Supplementary Affidavit of Prologis's attorney, Doc. *Id.* No. 291, Exh. 1. The court concludes from its experience, and upon a review of the case law, that the requested compensation for the time of paralegal McCoy is reasonable at $90/hour in 2005; and $100/hour in 2006.

### *Reasonableness of Costs*

### *Travel time*

■ Gould challenges Prologis's charges for travel time. Attorneys' fees may contain reimbursement for non-productive time, such as travel time, however, as with all hours billed, such hourly rates for attorneys must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation". *See Savoie, supra,* 166 F.3d at 463 (citing *Blum, supra,* 465 U.S. at 895 n. 11, 104 S.Ct. 1541). In the District of Connecticut, courts "tend to award 100% compensation of travel time for trial". *McInnis, supra,* 458 F.Supp.2d 7, 21 (citing *Gonzalez v. Town of Stratford,* 830 F.Supp. 111, 115 (D.Conn.1992); *Rose v. Heintz,* 671 F.Supp. 901, 905 (D.Conn. 1987); *Broadnax v. City of New Haven,* 2004 U.S. Dist. LEXIS 3835, No. 3:98CV807 (WWE), 3:02CV123 (WWE), 2004 WL 49109, at *1 (D.Conn. Mar. 3, 2004)). This practice is in part due to the " 'opportunity cost that is equal to the fee [a traveling attorney] would have charged [a] client if he had not been traveling' ". *Gonzalez, supra,* 830 F.Supp. at 115 (quoting *Henry v. Webermeier,* 738 F.2d 188, 194 (7th Cir.1984)).

■ In this district, "[a]ttorney travel time [other than during trial] may [also] be billed at 100% of the hourly rate when the hours are few, and the representation is able and successful". *Broadnax, supra,* 2004 WL 491079 at *1, 2004 U.S. Dist. LEXIS 3835 at *3–4 (citing *Rose, supra,* 671 F.Supp. at 906). Based in part on that reasoning, the district court in Connecticut awarded attorney travel time for travel "to and from settlement conferences and depositions". *McInnis, supra,* 458 F.Supp.2d 7, 21.

There are seven entries reflecting attorney travel time, each of which is reasonable [10]. For example, on May 10, 2005, attorneys Reynolds and Fleischer attended a hearing on their motion to dismiss; although, only attorney Reynolds billed for travel time (billing 5.10 hours for round trip travel). *See* Prologis's Exh. D. at p. 15. Also, on September 27, 2005, attorneys Reynolds and Fleischer billed 11.45 hours total for travel time in order to attend a hearing on a motion for summary judgment. *Id.* at 23. As noted, *see supra* at pp. 50–51, unbeknownst to them, the hearing had been continued at Gould's request. *See* Tr. at 49–50.

The enumerated entries, which have not been persuasively challenged, together with the customary practice in this district, support the conclusion that the request of the attorney's hourly rates for their travel time is reasonable.

*Meals:*

Gould also challenges Prologis's charges of four meals for attorneys traveling to court [11]. Prologis's Exh. E, at pp. 1, 2; Supplementary Affidavit of Michael J. Reynolds, at Exh. A, p. 2. It is the practice in the area served by this court, as well as in the Southern District of New York, *see supra* at p. 50, to bill for meals consumed during travel. *See In re MarketXT Holdings Corp., Nisselson, as Chapter 11 Trustee v. Empyrean Investment Fund, L.P.,* No. 04–12078, 2006 WL 2583644, at *5, 2006 Bankr.LEXIS 2218, at *14 (Bankr. D.Conn. July 21, 2006) (finding no merit in objections regarding "expenses requested, including meals"). Given the practice in the area served by this court and the circumstances of this case, the court concludes that all of the costs, including the four charges for meals, are reasonable.

## CONCLUSION

For the foregoing reasons, the court concludes that Prologis's attorneys' fees and costs are reasonable. Accordingly, it is ORDERED that Prologis motion 1 is granted and that Drinker is awarded attorneys' fees in the amount of $115,111.50, and Zeisler is awarded attorneys' fees in the amount of $43,461.50, and Drinker is awarded costs in the amount of $5,005.01, and Zeisler is awarded costs in the amount of $2,423.51; and IT IS FURTHER ORDERED that Prologis motion 2 is granted and that Drinker is awarded attorneys' fees in the amount of $6,786, and Zeisler is awarded attorneys' fees in the amount of $4,376, and Drinker is awarded costs in the amount of $712.51 and Zeisler is awarded costs in the amount of $159.77.

---

10. Prologis's Exh. D, at pp. 6, 25; Prologis's Exh. A, at pp. 14, 18; Supplementary Affidavit of Michael J. Reynolds, at Exh. A, p. 1: 01/25/05 entry, attorney Reynolds billed 7.3 hours for travel time to attend a hearing on expunging Prologis's claim; 11/08/05 entry, attorney Reynolds billed 7.10 hours for travel time to attend the hearing on motion for summary judgment; 04/18/06 entry, attorney Reynolds billed 4.7 hours for travel time to attend a hearing on fees; 07/18/06 entry, attorney Reynolds billed 5.8 hours for travel time to attend a hearing regarding discovery deadlines and discovery sanctions; 07/25/06 entry, attorney Reynolds billed 10.5 hours for travel time to prepare for trial at Zeisler & Zeisler.

11. Charges for meals include $40 for a meal during travel to court for oral argument on a motion to dismiss; $77.03 and $82.82 for meals during travel to court for oral argument on summary judgment; and, $55.17 for a meal during travel to court for trial.