06-1302-cv(L)
Chen v. Mt. Sinai-NYU Medical Center Health Systems

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

———————————————————————————————

August Term, 2007

(Argued: July 9, 2008                                    Decided: January 5, 2009)

Docket Nos. 06-1302-cv(L), 06-3810-cv(CON)

———————————————

ZUHUA CHEN, individually and as mother
and natural guardian of David Fan,
*Plaintiff,*


MT. SINAI-NYU MEDICAL CENTER HEALTH SYSTEMS,
NYU DOWNTOWN HOSPITAL and JOHN DOES 1-3,
*Defendants,*


RONALD J. SCHWARTZ,
*Objector-Appellee,*

*v.*


CHEN QUALIFIED SETTLEMENT FUND,
*Interested-Party,*


STEVEN F. GOLDMAN,
*Interested-Party-Appellant.*

———————————————

BEFORE:            POOLER and HALL, *Circuit Judges*[1]

Appeal from the judgment of the United States District Court for the Eastern District of

New York (Korman, *Judge*) denying Interested-Party-Appellant's application for attorneys' fees.

---

[1] The Honorable David G. Trager, United States District Judge for the Eastern District of
New York, sitting by designation, recused himself prior to oral argument.  Because the remaining
members of the Panel are in agreement, we have decided this case in accordance with § 0.14(2)
of the rules of this Court.

We hold that the district court did not abuse its discretion in denying the fee application in its entirety. We affirm.

––––––––––––––––––––––––

ARNOLD E. DIJOSPEH, Arnold E. DiJoseph P.C., New York, New York, *for Interested-Party-Appellant*.

SANDRA J. RAMPERSAUD, Stroock & Stroock & Lavan LLP, New York, New York, *for Objector-Appellee.*

––––––––––––––––––––––––

PER CURIAM:

Steven F. Goldman appeals from the district court order denying his application for attorneys' fees. On appeal, Goldman argues that the record does not support the district court's conclusions that Goldman engaged in misconduct with respect to the fees and expenses in the case and that Goldman failed to represent his client adequately with respect to the post-settlement proceedings in the district court. Goldman also argues that Judge Korman's bias against him influenced the district court's disposition of the fee application and merits reversal. We disagree, and hold that the district court did not abuse its discretion in denying Goldman's fee application and that the record does not support Goldman's claim of bias.

## I. Background

Because this case is instructive with respect to the nature of the conduct that may merit the denial of an attorney's application for fees, we provide a more detailed background here than we would otherwise normally provide.

This case arises from Goldman's representation of Zuhua Chen and her infant son, David Fan, in a medical malpractice action against the Defendants. In November 2002, Chen gave birth

to David, via emergency caesarian section, at 28-weeks gestation, secondary to breech presentation. During his birth, David suffered respiratory depression and severe brain damage. After his birth, David experienced additional devastating medical problems, including the liver disease extrahepatic biliary atresia, necrotizing enterocolitis, and secondary microcephaly. Neither party in this appeal disputes that David will require extensive and on-going medical treatment throughout the remainder of his life.

In January 2003, Chen, individually and as the guardian of David, executed a medical malpractice retainer with Goldman. In March 2003, Goldman filed in New York state court a medical malpractice complaint against the Defendants, which was later removed to the district court. In July 2004, Goldman and the Defendants reached a settlement agreement whereby the Defendants would pay a settlement in the amount of $2.4 million. Thereafter, Goldman filed in the district court a proposed Stipulation of Settlement and Infant's Compromise Order. The proposed Infant's Compromise Order directed the distribution of the $2.4 million as follows: (1) $428,000 in fees and expenses to Goldman; (2) $250,000 to Chen for her loss of services claim; and (3) $1,722,000 to be paid to Chen as trustee for David in a Special Needs Trust.

In his accompanying affidavit, Goldman indicated that, pursuant to his retainer with Chen, he was entitled to a fee of $408,000 and to expenses of $20,000. Although Goldman provided a general list of "services . . . rendered on this matter," including the "[o]btaining of all medical reports," he did not provide any documentation detailing his request for fees. Additionally, with the exception of medical records from the hospital where Chen delivered David, Goldman failed to provide any documentation of David's then-current medical condition,

3

an assessment of liability, a projection of expenses for David's future medical care, or an expert report upon which the district court could rely in assessing the reasonableness of the settlement.

In September 2004, the district court issued an order appointing Steven North as Special Master to "provide [the court] with his recommendation on the application to approve the infant's compromise in this case." In the order, the court acknowledged its "fiduciary duty to protect the interest of the infant" and noted that "although so much is at stake for the infant, the information provided by plaintiff's counsel is totally unhelpful."

After he was appointed, North sent Goldman a letter requesting various items and information from Goldman, including a "[d]etailed summary of all legal work performed." North also requested that Goldman explain how he had calculated his fee in the case and provide a detailed explanation of the disbursements for expenses. Goldman responded and provided some of the items requested by North. Goldman explained that he had not yet obtained records from David's then-treating physician or records related to a liver transplant David received shortly after his birth, and that he had not obtained any expert reports or memoranda. With respect to his fee calculation, Goldman explained that, after deducting the cost of his expenses in the case, he had calculated the fee based on the "sliding scale prescribed by the Office of Court Administration in the Appellate Division."[2] With respect to the explanation of disbursements or expenses, Goldman stated that they were "pretty much self explanatory."

_____

[2] This sliding scale is set forth in N.Y. Jud. Law § 474-a, which provides that in a medical malpractice case, an attorney's fee shall not exceed: (1) 30 percent of the first $250,000 of the sum recovered; (2) 25 percent of the next $250,000 of the sum recovered; (3) 20 percent of the next $500,000 of the sum recovered; (4) 15 percent of the next $250,000 of the sum recovered; (5) 10 percent of any amount over $1.25 million of the sum recovered. § 474-a(3) provides that the "percentages shall be computed on the net sum recovered after deducting from the amount recovered expenses and disbursements."

In October 2004, North sent Goldman another letter requesting the information that Goldman had not yet sent in response to North's previous one. Goldman responded, and, with respect to his fee calculation, stated, "I simply made the assumption that the med/mal sliding scale retainer was well recognized." He then calculated his fee to be $388,000, noting "[t]he retainer we used in Chen/Fan was a mistake . . . . We have now filed an amended retainer statement with the Judicial Conference."[3] In the letter, apparently in response to queries made by North, Goldman stated that he had not yet obtained a Life Care Plan detailing the future medical treatment David would require for the rest of his life.

In December 2004, North issued his Special Master's Report, which concluded that it was "impossible to fairly determine" whether "the settlement sum of $2,400,000 and the allocation of it is reasonable under these circumstances" or whether "the requested legal fee is justified." North noted that, "[d]espite ample opportunity having been extended to [Goldman] to explain in reasonable detail the basis for the proposed settlement and the justification for the requested legal fee . . . the materials presented [were] woefully inadequate in that, among other things, the submission [did] not include fundamental documentation that [had] been requested and [was] necessary to properly evaluate the matter."

With respect to the fee request, North noted that Goldman's initial fee request of $408,000 exceeded the amount permitted under § 474-a of the New York Judiciary Law, and hypothesized that Goldman had initially "improperly computed two separate legal fees each starting at 30% of the recovery first for the mother's cause of action and then again, beginning at

---

[3] Under the calculation set forth in New York Judiciary Law § 474-a, Goldman's fee in this case could not exceed $388,000.

5

30% for the child's cause of action." North noted that, "[w]hen pushed to provide the justification for the enhanced fee, [Goldman] simply provided a calculation that computes the proper statutory fee . . . and never proffered an explanation for having sought an inflated fee in the first place." In a footnote, North stated that Goldman's initial retainer in the case "provided for a sliding scale legal fee in excess of the statutory maximum and additionally contained an agreement of doubtful propriety that the client would consent to a one-third fee if the case 'goes to trial.'" North also noted that, in his affirmation in support of his fee, Goldman had asserted that his services rendered including "obtaining . . . all medical reports." However, North pointed out that "[t]here were no medical reports obtained." Further, North noted that Goldman's claimed disbursements were "either unheard of, unjustified or unsupported, i.e., 'overtime clerical' – $750; 'expert (damages)' – $1,500; 'interpreting services' – $9,130; 'medical records'- $3,325; etc."

With respect to the reasonableness of the settlement, North stated that he had retained a medical expert to review the medical records that Goldman had provided "for the purpose of assessing the liability issues." According to North, that expert had informed him that the records obtained by Goldman were "incomplete and insufficient to base a reasonable medical-legal assessment upon." North opined that, "[i]t is unheard of to submit infant compromise papers, particularly in a case with the severity of the alleged damages here and not present any contemporary medical report and rehabilitative evaluation of the child's present status and future needs."

North also opined that Goldman had failed to offer sufficient information to justify his suggestion that a portion of the recovery be placed in a supplemental needs trust, noting that

6

"[w]ithout knowing with some reasonable medical clarity what the child's future needs are, it is not possible to assess the advisability of a supplemental needs trust." Finally, North noted that Goldman had failed to respond to many of North's requests for information, including failing to provide detailed explanations and documentation of disbursements and expenses.

Thereafter, in December 2004, the district court issued an order directing Goldman to show cause why he should not be removed as counsel for Chen. In the order, the court noted that "[t]he inability of the Special Master to adequately assess the merits of the settlement is attributed directly to the failure of [Goldman] to obtain or provide material necessary for such an assessment."

Later in December 2004, Goldman responded to the district court's order via letter, with which he provided documentation related to David's ongoing medical care. With respect to the medical records from the NYU Downtown Hospital, Goldman stated that he had not initially obtained all of the records "because both sides believed the case would be settled." However, Goldman explained that he would obtain the records and provide them to the court. Goldman also indicated that he would provide the court with a detailed analysis of his legal services and expenses. Thereafter, Goldman sent the court a seven-page letter detailing his work in the case. That letter, however, did not provide a breakdown of expenses or fees in the case.

In February 2005, the district court issued an order informing the parties that it had decided to retain its own medical expert to review the relevant medical records in the case. The court directed the Defendants to provide it with the relevant medical records, and noted that it had "never had a case in which the presentation of an infant's compromise has been so poorly presented by plaintiff's counsel." In March 2005, the district court appointed a guardian ad litem

for David. The court explained that it had done so for two reasons. "The first is the lack of sophistication of the natural guardian of the infant and the second is the wholly inadequate assistance of counsel in preparation of the infant's compromise order." According to the court, in addition to retaining the medical expert, it had also "consulted with . . . others to assess the child's needs and to assist in a considered judgment on the use of a structured settlement and a Special Needs Trust." The court noted that, with respect to the structured settlement and Special Needs Trust, Goldman had "in conversations demonstrated a profound ignorance of the circumstances that make such a vehicle necessary." Further, the court stated that Goldman had not "undertaken the kind of assessment necessary to fully and completely evaluate the financial needs of the child over his life." The court concluded that North's "devastating assessment" of Goldman's application for approval of the compromise and fees "raise[d] serious questions relating to the manner in which [Goldman] calculated his fee and the honesty of his claims for disbursements." The court appointed Ronald J. Schwartz, the Objector-Appellee in this appeal, as guardian ad litem. In April 2005, after receiving various materials from its retained medical expert and from Schwartz, the district court approved the stipulated settlement and directed that a qualified settlement fund be established.

In June 2005, Goldman, through counsel, filed an affirmation in support of his application for attorney's fees. In support of that motion, Goldman provided a breakdown of 284 hours he claimed to have expended on Chen's case. However, the breakdown offered no explanation or documentation for the expenses he had allegedly incurred in working on the case and which he had requested in the application for fees. In September 2005, the district court appointed Schwartz to represent David's interests on the fee application. In the order, the court noted that

8

"[b]ecause I question both Mr. Goldman's entitlement to counsel fees and the amount of the fees he seeks, it is apparent that his interest and the interest of David Fan are in conflict. Moreover, since Mr. Goldman is no longer a member of the bar, he could not appear in this proceeding in any event."[4]

In December 2005, the district court conducted a hearing on Goldman's application for fees. During that hearing, the court asked Goldman to explain how he had calculated his initial request for $408,000 in fees, and the Special Master noted that Goldman had never explained the error he had alleged was the basis for the incorrect calculation. Goldman told the court that the initial fee request was the product of a typographical error in the first retainer agreement with Chen. North suggested that Goldman had arrived at the initial figure of $408,000 by taking "a separate 30 percent from the mother's net amount of $100,000." North also refuted Goldman's explanation for the error, noting that, even applying the formula set forth in the initial retainer agreement, "it does not come out to $408,000." North told the court that he had computed the fee based on the calculation set forth in the initial retainer, and "it . . . come[s] out . . . even though it's wrong, in the amount of $388,000." During the hearing, Judge Korman referred to Goldman's fee application and compromise order as "totally incompetent" and noted that he had "seen lawyers who are small time practitioners who settle slip and fall cases put together an infant's compromise that is ten times or 100 times better than this . . . . I have no confidence that

---

[4] The record reflects that, at some point during the proceedings in this case, Goldman had resigned from the bar. The decision noting his removal from the roll of attorneys is at *In re Goldman*, 792 N.Y.S.2d 326 (N.Y. App. Div. 1st Dep't 2005), and indicates that his removal was effective May 12, 2005.

somebody who prepares legal documents like this when his own fee is involved, much less

dealing with other clients, has achieved the best result that could have been obtained in the case."

In February 2006, the district court issued an oral decision denying Goldman's

application for fees in its entirety.  In July 2006, the district court issued a written order

memorializing its denial of Goldman's fee application.  In the order, the court noted that

Goldman had never given "a credible explanation for the overcharge, and . . . the absence of an

explanation . . . led [the court] to conclude that the overcharge was deliberate."  The court

considered and rejected Goldman's explanation that the initial fee request was the product of a

typographical error in the retainer agreement, noting that, even under the calculation in the

retainer, the fee would still have been $388,000.  In conclusion, the court stated that it was not

convinced that Goldman had earned the fees he requested:

> Over the last 21 years I have overseen a fair number of infant's compromise cases,
> ranging from trip and fall cases to those involving serious brain damage with
> settlements reaching into the millions of dollars.  The lawyers in those cases
> earned their fees by the settlements they achieved and by post-settlement work
> that Mr. Goldman failed to provide.  I am not going to allow him to be
> compensated in the same way as attorneys who do their job.  Moreover, assuming
> that my conclusion regarding the deliberate fabrication of Mr. Goldman's initial
> application for fees and disbursements is not sustained, the utter carelessness in
> the calculation nevertheless warrants additional sanction.

The district court denied Goldman's fee application in its entirety and granted his request

for costs only to the extent that Goldman could substantiate the disbursements he claimed in the

application.

This appeal followed.

## II. Discussion

10

We review a district court's decision to deny attorneys' fees for abuse of discretion. *See Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 229 (2d Cir. 2006); *see also Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) ("Because attorney's fees are dependent on the unique facts of each case, the resolution of this issue is committed to the discretion of the district court."). "As a general rule, so long as the district court has applied the correct criteria, its decision will withstand scrutiny." *Mautner v. Hirsch*, 32 F.3d 37, 39 (2d Cir. 1994). Further, "[a] district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) (footnotes omitted).

New York courts have consistently held that "an attorney who engages in misconduct by violating the Disciplinary Rules is not entitled to legal fees for any services rendered." *Shelton v. Shelton*, 542 N.Y.S.2d 719, 720 (N.Y. App. Div. 2d Dep't 1989); *see also Schwartz v. Jones*, 297 N.Y.S.2d 275, 276 (N.Y. Sup. Ct. 1969) ("When an attorney is denied a fee the authorities speak of it as a penalty visited upon him for misconduct.") (citation omitted). New York's Disciplinary Rules provide that "[a] lawyer shall not enter into an agreement for, charge or collect an illegal or excessive fee." 22 N.Y. ADC 1200.11(a). Accordingly, if the district court's conclusion that Goldman purposely requested an excessive fee was not clearly erroneous, then the court did not abuse its discretion in denying Goldman's fee application in its entirety.

Goldman argues that the record does not support the district court's decision to deny his application for fees. He also argues that the record suggests that "the predetermined endpoint for

11

the court was the denial of any legal fee" to Goldman. Specifically, Goldman points to the district court's references to his voluntary resignation from the practice of law – during an ongoing disciplinary investigation – as evidence that the district court considered his resignation as a factor in deciding to deny his application for legal fees. Goldman's arguments are not persuasive.

The facts here present a close case. Goldman's counsel argues that the excessive fee request was the result of Goldman calculating his fee according to the scale set forth in § 474-a and then mistakenly adding the total for expenses to that sum. Given that Goldman's initial fee request exceeded the maximum statutory amount by $20,000, the same amount he requested in expenses, this explanation is plausible.

The district court's factual conclusion in this case, however, was also supported by the record. When the Special Master asked Goldman to explain the calculation of his fee in the case, Goldman merely reiterated the excessive figure and offered a general description of the services he had allegedly rendered to his client. Thereafter, when the Special Master noted that the fee exceeded the authorized amount, Goldman recalculated the fee pursuant to § 474-a and explained that the initial calculation was the result of an error in his retainer agreement with his client. However, when pressed – first by the Special Master and then by the district court – to explain how the discrepancy resulted in the excessive fee amount, Goldman was unable to do so. The import of his inability to explain the error is compounded by the fact that, even when the fee was calculated according to the incorrect formula contained in the retainer agreement, the result was $388,000, rather than the $408,000 Goldman initially requested. At the December 2005 hearing on his fee application Goldman continued to insist that the typographical error was the source of

12

his excessive fee request, even after his counsel advised him that his explanation did not "add up." Not once during the proceedings in the district court did Goldman rely on his counsel's proposed explanation for the discrepancy as the source of his excessive fee request. Accordingly, the record demonstrates that it is at least equally as plausible that Goldman engaged in misconduct with respect to his fee, and, thus, violated New York's Disciplinary Rules.

When a "district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985). It cannot be said that the district court abused its discretion by choosing one of two equally plausible views of the evidence in this case.

Goldman argues that the miscalculation of the fee, although "easily explainable and quickly acknowledged and corrected," became "the inevitable lynchpin of the District Court's denial" of his application for fees. This argument might have some merit had Goldman not reiterated the excessive figure when the Special Master first asked for an explanation of his fee calculation or had Goldman been able to explain, at any point in the proceedings, how the alleged error resulted in the incorrect fee request. Rather, the record demonstrates that the fee discrepancy and Goldman's inability to explain it were a sound basis for the district court's determination that Goldman had committed misconduct in this case.

Goldman's argument based on the district court's reference to his resignation from the practice of law also presents no basis for reversal in this case. Although the record demonstrates

13

that the district court did refer to Goldman's resignation on at least two occasions, nothing in the district court's orders in this case suggests that it considered that resignation – or the circumstances surrounding it – in deciding to deny Goldman's fee application. Absent some evidence that the district court factored Goldman's resignation into its decision to deny his application for fees, this claim presents no basis to reverse the district court's decision.

Further, Goldman's argument that the record shows the district court intended to deny him fees from the outset of the case is also without merit. Goldman points to occasions on which the district court questioned the sufficiency of his filings and appointed the Special Master and Guardian Ad Litem in this case. What Goldman points to as evidence of the district court's predisposition toward denying his application is actually evidence of the care with which the district court exercised its discretion in this case. Goldman argues that the district court's immediate concern with the quality of his filings demonstrates that the court was committed to denying his fee application from the outset. The record demonstrates, however, that the district court's early misgivings about the sufficiency of Goldman's representation were well-founded concerns addressed in some part to the medical conditions of Goldman's client and not evidence that the court had already determined the merit of the fee application.

The record also amply supports the district court's determination that Goldman had provided inadequate assistance to his client in terms of doing what was necessary to obtain court approval of the settlement. In his proposed Stipulation of Settlement and Infant's Compromise Order, Goldman offered none of the documentation and reports necessary for the court to determine whether the settlement proposed by the parties was reasonable. After Goldman failed to respond sufficiently to repeated requests for the information from the Special Master, the

14

district court took it upon itself to obtain the information needed to ascertain whether the settlement was reasonable. Goldman provided no real assistance to the court in gathering the required information. Equally disturbing, the record suggests that Goldman himself had made only limited inquiries into David's condition and the nature and extent of David's future medical needs. Given the importance of this information in the district court's consideration of the settlement, it was not an abuse of discretion for the district court to determine that Goldman had inadequately represented his client.

Goldman argues that the district court's conclusion regarding the effectiveness of his representation disregards the "enormously successful result" of securing a settlement in the case. This argument might have merit if Goldman had himself made the effort to obtain the documentation and information necessary to ascertain whether the settlement agreed to between the parties was sufficient to address David's on-going and extensive medical needs. He did not. However appropriate the settlement might have been, Goldman failed to engage in the work required to secure the district court's approval of the settlement.

Goldman argues that the district court's order should be reversed because it is tainted by the district court's "unmistakable appearance of partiality and bias." In addition to claiming that the court was biased against him because of his disciplinary problems, a claim we have already addressed, Goldman suggests that his admitted "penchant for being somewhat slow and less than complete in his post-settlement handling of the paperwork needed to complete the infant's compromise" caused the district court to be biased against him. He urges this Court to reverse the district court's decision and, on remand, direct that the fee application be assigned to a different district court judge.

15

Goldman's argument on this point is meritless. Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality. *See Liteky v. United States*, 510 U.S. 540, 555 (1994). Here, the record demonstrates that Judge Korman was critical of the quality of Goldman's representation in this case. On one occasion, Judge Korman used derogatory language in referring to Goldman's affidavit in support of the proposed Infant's Compromise Order. Given that the quality of Goldman's work was inextricably intertwined with the court's consideration of the fees application, it was not inappropriate for Judge Korman to express an opinion regarding Goldman's handling of the case. Further, Judge Korman's criticisms of the filing were neither unfounded nor so extreme that they suggest that he was biased against Goldman. Rather, they represented his honest assessment of the issues relevant to the court's determination of Goldman's fee application.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.