21-2059-cv
*Villetti v. Guidepoint Glob. LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of July, two thousand twenty-two.

PRESENT:
>    GERARD E. LYNCH,
>    JOSEPH F. BIANCO,
>    WILLIAM J. NARDINI,
>        *Circuit Judges*.

_____

Valentia Villetti, Faiza Jibril, M.D.,

>        *Plaintiffs-Appellants*,

>        v.                                             21-2059-cv

Guidepoint Global LLC,

>        *Defendant-Appellee.**

_____

FOR PLAINTIFFS-APPELLANTS:        STUART LICHTEN, Lichten & Bright P.C., New York, NY.

FOR DEFENDANT-APPELLEE:           BRITTANY L. PRIMAVERA (David J. Grech, *on the brief*), Gordon Rees Scully Mansukhani, LLP, New York, NY

---

\* The Clerk of Court is respectfully directed to amend the caption as set forth above.

Appeal from a judgment of the United States District Court for the Southern District of New York (Vyskocil, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED in part** and **VACATED and REMANDED in part**.

Plaintiffs-appellants Valentia Villetti and Faiza Jibril, M.D. (collectively, "plaintiffs"), appeal from the August 11, 2021 judgment of the United States District Court for the Southern District of New York (Vyskocil, *J.*) granting summary judgment pursuant to Federal Rule of Civil Procedure 56(a) to Guidepoint Global LLC ("Guidepoint").

Plaintiffs brought multiple causes of action against Guidepoint under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law, § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York, § 8-101 *et seq.* ("NYCHRL"), alleging that Guidepoint refused to hire Jibril on the basis of her gender, terminated Villetti on the basis of her gender, and discharged Villetti in retaliation for opposing Guidepoint's discriminatory practices. The district court granted summary judgment to Guidepoint on all of plaintiffs' claims. We assume the parties' familiarity with the underlying facts and procedural history of this case, to which we refer only as necessary to explain our decision.

## DISCUSSION

We review *de novo* an award of summary judgment, "resolv[ing] all ambiguities and draw[ing] all reasonable inferences in the light most favorable to the nonmoving party." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a

2

reasonable jury could return a verdict for the nonmoving party."[1]   *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks omitted).

## I.   Jibril's Failure-to-Hire Claims

Jibril contends that genuine issues of material fact precluded summary judgment on her Title VII, NYSHRL, and NYCHRL claims for employment discrimination based on Guidepoint's alleged failure to hire her as a Healthcare Content Strategist because of her gender.   We disagree.

We treat employment discrimination claims under Title VII and the NYSHRL as "analytically identical," *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008), and analyze both under the *McDonnell Douglas* burden-shifting framework, *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).   Pursuant to this framework, the plaintiff must first establish a *prima facie* case of discrimination; the employer must then "produc[e] evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason"; and the plaintiff must then "demonstrate that the proffered reason was not the true reason for the employment decision," but rather, was a pretext for discrimination.   *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128–29 (2d Cir. 2012) (internal alterations adopted and quotation marks omitted).

---

[1]   As a threshold matter, plaintiffs assert that the district court "invented a new summary judgment procedure" because it failed to consider various of plaintiffs' declarations and exhibits, instead exclusively relying upon plaintiffs' admissions in their Local Rule 56.1 statement.   Appellants' Br. at 9.   We reject this characterization.   We have frequently stated that "[a] district court has the discretion to adopt local rules that are necessary to carry out the conduct of its business," including Rule 56.1, *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000), and have previously "affirmed the grant of summary judgment on the basis of uncontested assertions in the moving party's Local Rule 56.1 statement," *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).   In any event, the district court did not rely exclusively on the Rule 56.1 statements and, in fact, directly cited and quoted Villetti's declaration.   Moreover, regardless of the scope of the district court's review of the record below, we review the record *de novo* in connection with a summary judgment motion.   *Summa*, 708 F.3d at 123.

To establish a *prima facie* case under Title VII and the NYSHRL for a failure-to-hire claim, Jibril must prove that: "(1) [s]he is a member of a protected class, (2) [s]he was qualified for the job for which [s]he applied, (3) [s]he was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). It is uncontested that Jibril's gender places her in a protected class and that she was not hired for the position. However, even assuming *arguendo* that Jibril was also qualified for the position,[2] we agree with the district court that Jibril has failed to establish the fourth element of a *prima facie* case.

Most notably, as Jibril concedes, two other women interviewed for the same position that Jibril was allegedly denied because of her gender, and one of those women was ultimately hired to fill it.[3] In fact, Guidepoint ended up hiring a total of fifteen individuals—both men and women—"to perform aspects of the position sought by Jibril." Joint App'x at 858. Moreover, Guidepoint later attempted to recruit Jibril for a different position. In light of this context, the only evidence of discriminatory intent to which Jibril points is insufficient to create a *prima facie* case. Jibril cites Villetti's deposition testimony to the effect that Villetti's supervisor told her that Guidepoint CEO Albert Sebag decided not to hire Jibril because she was "not a hedge fund guy." *Id.* at 142, 150. But even taking the phrase "hedge fund *guy*" in the literal sense most favorable to Jibril, and even assuming that the hearsay testimony regarding the supervisor's statement is

---

[2] The parties dispute whether or not Jibril was actually qualified for the position. However, because we conclude that Jibril's claim fails as a matter of law regardless, this dispute is immaterial.

[3] At oral argument, plaintiffs' counsel disputed this fact, arguing, *inter alia*, that Guidepoint "told Dr. Jibril that they hired a man" for the position. Oral Arg. Audio at 3:21–3:46. However, in plaintiffs' Rule 56.1 statement, they specifically admitted that one of the other women that Guidepoint interviewed was "offered and accepted the role." Joint App'x at 857. In light of that concession, we reject plaintiffs' counsel's attempt to assert new facts on appeal.

4

admissible, Villetti never testified that the supervisor was purporting to report Sebag's exact words; without more, a reasonable trier of fact could not conclude from that testimony that Guidepoint denied Jibril the position on the basis of gender. Thus, the district court correctly granted summary judgment to Guidepoint on Jibril's claims under Title VII and the NYSHRL.

Jibril also asserts the same claim under the NYCHRL. Because the NYCHRL defines discrimination more broadly than its federal and state counterparts, "even if the challenged conduct is not actionable under federal and state law," we still "must analyze NYCHRL claims separately and independently." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). "To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other[s] . . . because of her gender.'" *Id.* at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)). Summary judgment is warranted "if the record establishes as a matter of law that discrimination . . . played no role in the defendant's actions." *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 76 (2d Cir. 2015) (internal alternations adopted and quotation marks omitted).

For the same reasons outlined above, we agree with the district court that, even under the NYCHRL's more permissive standard, Jibril's discrimination claim cannot survive summary judgment. Given plaintiffs' concession—that Guidepoint hired a woman for the same position that Jibril sought—no reasonable juror could find that Guidepoint treated Jibril "less well" based upon her gender. *Mihalik*, 715 F.3d at 110. Accordingly, the district court also properly granted summary judgment to Guidepoint on Jibril's discrimination claim under the NYCHRL.

## II. Villetti's Gender Discrimination and Retaliation Claims

5

Villetti similarly contends that genuine issues of material fact precluded summary judgment on her Title VII, NYSHRL, and NYCHRL claims for gender discrimination and retaliation.   Although we agree with the district court that summary judgment was warranted for Guidepoint on Villetti's gender discrimination claims, we conclude that triable issues of fact preclude summary judgment on her retaliation claims.

### a. Gender Discrimination Claims

Villetti asserts that Guidepoint subjected her to disparate treatment because of her gender in connection with her termination.[4]   As with failure-to-hire claims, these claims of gender-based disparate treatment under Title VII and the NYSHRL are analyzed under the *McDonnell Douglas* framework.   *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).   The district court determined that Villetti had failed to establish the fourth element of her *prima facie* case—namely, whether the circumstances surrounding Villetti's termination "[gave] rise to an inference of discrimination."   *Id.*   We agree.

Villetti contends that Guidepoint both "treated women differently from men on a variety of occasions" and "discharged [her] because of her sex," Joint App'x at 13–14, pointing to three other female Guidepoint employees who were allegedly dismissed, demoted, or otherwise discriminated against on the basis of their gender.   However, the record here is devoid of any evidence apart from Villetti's conclusory allegations to establish that the other women she mentions—who are not parties to the action—experienced any gender-based discrimination at Guidepoint.   Although a plaintiff's burden at the *prima facie* stage is "not onerous," *Littlejohn v.*

---

[4]   Although Villetti also describes the treatment she allegedly experienced as a "hostile work environment," the district court and the parties both appear to analyze this claim as one of disparate treatment, and plaintiffs' counsel confirmed at oral argument that no hostile work environment claim was asserted.

*City of New York*, 795 F.3d 297, 308 (2d Cir. 2015) (internal quotation marks omitted), a plaintiff cannot establish a *prima facie* case with only "purely conclusory allegations of discrimination, absent any concrete particulars," *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (holding summary judgment was proper where there was "nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony").

Further, we have repeatedly emphasized that when the firing decisionmaker is also the hiring decisionmaker, "it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997); *see also Jetter v. Knoth Corp.*, 324 F.3d 73, 76 (2d Cir. 2003). As the district court noted, the "same actor inference" is particularly apt in this case, Special App'x at 7, as there is no dispute that Sebag both hired and fired Villetti and that termination "occurred only a short time after hiring," *Grady*, 130 F.3d at 560—namely, after only six months.

Even if a reasonable factfinder were not entitled to rely on the same actor inference in this case, Villetti offers no evidence affirmatively supporting her claim of gender discrimination. As for Sebag, although Villetti alleges that she "saw numerous actions taken by Sebag that [she] believed constituted sex discrimination," she points to only one specific instance—the call from Sebag when she was in Boston—as a time when "Sebag was dismissive or belittling of her." Joint App'x at 852. Further, although Villetti claims that "Sebag would not have talked to a male in the same way" as he spoke to her during that call, she also admits that she "never witnessed a conversation between Sebag and a male employee under [similar] circumstances." *Id*. Moreover, as related to that specific instance, Villetti concedes that Sebag "was angry with" Villetti's male supervisor (Bouker Pool) "as well as with her," and that Sebag terminated Pool on

7

the same day that Villetti was terminated.   *Id.* at 852–53.   The fact that Villetti's male supervisor simultaneously experienced the same adverse action further undermines Villetti's conclusory claim that she was treated differently by Sebag, in connection with her termination, based upon her gender.

In short, because Villetti proffers no evidence which gives rise to an inference of gender-based discrimination, we agree with the district court that she did not establish a *prima facie* case of gender discrimination and that, accordingly, her Title VII and NYSHRL claims cannot survive summary judgment.

Villetti's discrimination claim under the NYCHRL similarly fails.   As noted *supra*, to establish a gender discrimination claim under the NYCHRL, Villetti must show that she was treated "less well" because of her gender.   *Mihalik*, 715 F.3d at 110.   Even construing the evidence most favorably to Villetti, no rational jury could conclude that Villetti was treated less well than her male colleagues in connection with the termination decision.   Accordingly, we conclude that Villetti's NYCHRL discrimination claim also cannot survive summary judgment.

### b. Retaliation Claims

Finally, Villetti contends that genuine issues of material fact preclude summary judgment on her retaliation claims under Title VII, the NYSHRL, and the NYCHRL.   We agree.

Retaliation claims under Title VII and the NYSHRL are similarly governed by the *McDonnell Douglas* framework.   *Summa*, 708 F.3d at 125.   To establish a *prima facie* case of retaliation, the plaintiff must show that: "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity."   *Id.* More specifically, with respect to causation, Villetti must establish that retaliation for her protected

activity was a "but-for" cause of her termination, "not simply a 'substantial' or 'motivating' factor in the employer's decision." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348 (2013)).

Villetti alleges that Guidepoint terminated her in retaliation for an email that she sent to the company's human resources department complaining of Sebag's and a Guidepoint consultant's behavior and a series of what she considered adverse employment actions against female employees. It is undisputed that Guidepoint was aware of this email and later took adverse employment action against Villetti. Moreover, construed most favorably to Villetti, her complaint to HR about Sebag and the Guidepoint consultant's alleged discrimination constituted protected activity.[5] Additionally, by putting forth evidence that she was terminated within such a short temporal proximity to making her complaint to HR—approximately one week—Villetti has adequately established a *prima facie* case that her termination was attributable to retaliation. *Gorman-Bakos v. Cornell Co-op. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) ("[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation

---

[5] Counsel for Guidepoint asserted at oral argument and in briefing before the district court that Villetti's email did not qualify as a protected activity under Title VII or the NYSHRL because "nowhere in [the email] does Ms. Villetti identify a form of gender discrimination or object to it." Oral Arg. Audio at 10:47–10:55. We find that argument unpersuasive. A substantial portion of Villetti's email focused upon her "extreme discomfort" with the treatment of women at Guidepoint, including a reference to the alleged "negative changes" to one employee's role during her maternity leave and noting that Villetti was "prevented from hiring an extremely qualified *female* candidate." Joint App'x at 320 (emphasis added). Although Villetti did not explicitly use the phrase "gender discrimination," the absence of such phrase is not dispositive. Instead, given the context of Villetti's email, a reasonable reader could interpret the email as a complaint about gender discrimination. *See, e.g.*, *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 113 (2d Cir. 2019) (holding that an email that "reasonably suggested," but did not explicitly state, a complaint of gender discrimination was "sufficient to meet [the] minimal burden at the prima facie stage").

9

claim by showing that the protected activity was closely followed in time by the adverse employment action." (internal alterations adopted and quotation marks omitted)).[6]

As Villetti has established a *prima facie* case, the burden shifts to Guidepoint to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Summa*, 708 F.3d at 125. Guidepoint points to two non-retaliatory reasons for terminating Villetti: (1) a co-worker's "complaints regarding Villetti to both Pool and Guidepoint's human resources department"; and (2) "Villetti's unauthorized trip to Boston and the fact that Pool, her male supervisor, was terminated, along with Villetti, shortly after that trip." Appellee's Br. at 18.

Because of these articulated reasons, the presumption of retaliation arising from the *prima facie* case dissipates under *McDonnell Douglas*, and Villetti must provide evidence that the non-retaliatory reasons are merely pretexts for retaliation. *Weinstock*, 224 F.3d at 42. To be sure, we have emphasized that once an employer has proffered non-retaliatory reasons, temporal proximity alone is not enough for a plaintiff to survive summary judgment. *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). However, we have also held that "[a] plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action[s]." *Zann Kwan*, 737 F.3d at 846.

---

[6] The district court concluded that "[b]ecause Guidepoint shows that its decision was related to other causes with respect to Villetti's work performance . . . Villetti cannot establish that 'but-for' her complaint she would not have been terminated" and, accordingly, determined that Villetti failed to establish a *prima facie* case. Special App'x at 10–11. However, but-for causation does not "require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015) (quoting *Zann Kwan*, 737 F.3d at 846). Further, although a plaintiff must demonstrate but-for causation to ultimately survive a motion for summary judgment, that causation standard "does not alter the plaintiff's ability to demonstrate causation at the prima facie stage on summary judgment . . . indirectly through temporal proximity." *Zann Kwan*, 737 F.3d at 845. Thus, we conclude that Villetti established a *prima facie* case and proceed with the next step of the *McDonnell Douglas* analysis.

10

Here, in addition to the temporal proximity between her complaint (March 12, 2018) and her subsequent termination (March 19, 2018), Villetti has pointed to various inconsistencies in Guidepoint's proffered reasons for her termination. For example, in his deposition, Sebag suggested that Villetti was terminated because she "did not meet [Guidepoint's] expectations of performance" by failing to conduct the required number of remote teleconferences, although he could not recall if "her performance [was] poor in any [other] way." Joint App'x at 828–29. Indeed, although Sebag briefly mentioned the reasons articulated by Guidepoint in this lawsuit for her termination—namely, the co-worker complaint or an unauthorized trip to Boston—he did not specifically identify those as his reasons for firing Villetti. Moreover, in its motion for summary judgment before the district court, Guidepoint stated that Sebag's decision to terminate Villetti was made after the company conducted "an internal investigation wherein several employees were interviewed." *Id.* at 407. However, Sebag never mentioned this investigation during his deposition or provided any other details about the decision-making process that led to Villetti's termination.[7] Further, Guidepoint provided no documentation detailing the investigation's findings or corroborating its existence, citing only to Villetti's termination letter in its summary judgment papers, which outlined no reasons for the separation. On appeal, Guidepoint no longer references the alleged internal investigation at all, instead asserting that because Villetti "was an at-will employee of Guidepoint . . . Guidepoint was not required to provide any description of why it discharged Villetti." Appellee's Br. at 18.

Additionally, although Pool's simultaneous termination might dispel any inference of disparate treatment based on gender (as discussed *supra*), his termination merely three days after

---

[7] In fact, when asked if he played any role in Villetti's discharge, Sebag responded, "I don't recall," Joint App'x at 831, even though the parties agree that he was the decisionmaker.

filing his own complaint could provide a reasonable inference, construing the evidence most favorably to Villetti, that they were both fired in retaliation for their complaints. Guidepoint points to no evidence in the record regarding the reasons for Pool's termination, and Sebag gave only vague and contradictory answers when asked about Pool. *See* Joint App'x at 832 (not recalling when Pool "left" but agreeing he did not "know whether [Pool] was dismissed or whether he left voluntarily"); *id.* at 836 (stating he did not recall "receiv[ing] any complaints about . . . Pool"). Further, even though Guidepoint claims that Villetti's traveling to Boston without proper authorization was a reason for her termination, Villetti, as the district court noted, disputed "whether [she] needed prior approval or authorization to travel." Special App'x at 2.

Viewing the evidence in the light most favorable to Villetti, as we must, we conclude that "[f]rom such discrepancies[,] a reasonable juror could infer that the explanations given by [Guidepoint] . . . were pretextual, developed over time to counter the evidence suggesting" retaliation. *E.E.O.C. v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994). Coupled with Pool's termination and "the very close temporal proximity between [Villetti's] protected conduct and her termination," these inconsistencies "are sufficient to create a triable issue of fact with regard to whether [her] complaint was a but-for cause of her termination." *Zann Kwan*, 737 F.3d at 847. We recognize that these inferences are not the only reasonable inferences to be drawn from the record, and that Guidepoint may be able to rebut these inferences with other evidence. However, any such competing reasonable inferences in the record, including any credibility assessments of the witnesses necessary to evaluate such inferences, cannot be resolved on summary judgment.[8]

---

[8] For the same reasons, the retaliation claim under the broader provision contained in the NYCHRL also survives summary judgment. *See Zann Kwan*, 737 F.3d at 843 n.3.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). In sum, we conclude there is sufficient evidence to preclude summary judgment on Villetti's retaliation claims.

*      *      *

We have considered all of the parties' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM in part** and **VACATE in part** the judgment of the district court and **REMAND** for proceedings consistent with this order.[9]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[9] We deny Villetti's request to reassign the case to a different judge on remand. The sole reason for requesting reassignment is that the same district court judge has granted two other summary judgment motions and three motions to dismiss in employment discrimination cases. The mere existence of prior adverse rulings on presumably similar claims in other cases, without more, does not provide a basis for questioning a judge's fairness or impartiality. *See Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227–28 (2d Cir. 2009) (holding that "adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality"). Accordingly, although "in a few instances there may be unusual circumstances" where "reassignment is appropriate," *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 146–47 (2d Cir. 2000) (internal quotation marks omitted), Villetti fails to establish that such unusual circumstances are present here.